*1344 The opinion of the court was delivered by
Watkins, J.
Plaintiff sues for an unpaid balance of salary as due him under a written contract with the deceased, on the theory that his employment was that of a clerk, or servant, at a certain fixed annual salary of $3000, payable in monthly instalments in advance— he having been sent away before the expiration of his term of service, and without any serious grounds of complaint.
To his demand the executor interposes two defences, to-wit:
1. That prior to the time plaintiff had entered upon the discharge Of the duties imposed upon him under the stipulations of the written agreement between the parties, ap renewed on the 2d. day of July, 1892, Pierre Lanaux, obligee therein, departed this life on September 6, 1892, and that for that reason his claim is not founded in law.
2. That the existence and continuation of said contract — if it were at date of Lanaux’ death in operation, and plaintiff in the active performance thereof — depended, in fact and in law, as well as in eontempiation of the respective parties, upon both of them being in existence during its full term, and that the death of the obligee terminated said contract and put an end to the rights and obligations of both parties thereto, owing to the nature of the contract and the .physical impossibility of its execution.
On the trial there was judgment in favor of the defendant, and the plaintiff has appealed.
The contract, provisions of which plaintiff seeks to enforce, is couched in the following terms, and same is reproduced as the best method of disclosing the salient points in controversy.
“ New Orleans, July 1, 1890.
“ Agreement.
“It is hereby agreed between Pierre Lanaux, party of the first part, and Auguste Tete, party of the second part, as follows, to-wit: The party of the first part hereby employs the party of the second part as a sugar broker for the period of one year, from July 1, 1890, to effect the sales of all sugars and molasses that may be consigned to him, the party of the first part; and in lieu of the usual commissions allowed on such sales, to pay the party of the second part a fixed salary of three thousand dollars ($3000), payable two hundred and fifty dollars ($250) per month. And the party of the second *1345 part, in consideration of said salary to be paid to him by the party of the first part, as aforesaid, agrees to effect such sales and to exert all his personal influence to promote the interest of said party, and to effect no sales of sugar and molasses, except those consigned to him (the party of the first part). And the said party of the second part further agrees to write all letters concerning sugar and molasses market of said party of the first part, and to make out all. account sales of sugar and molasses in all said transactions made by him for said party of the first part.
“ Signed in duplicate on the day of the month and year above written.
(Signed) “Pierre Lanaux.
“Aug. Tete.”
The parties place upon this contract two altogether different interpretations, thus introducing into this litigation the element of uncertainty that it becomes our duty to resolve. And it must be admitted that the question is not free from serious doubt, notwithstanding the lower judge held with the defendant.
The ease must depend upon the capacity in which the parties respectively covenanted that the plaintiff should act — whether as broker, clerk, or agent — the plaintiff contending that his engagement was that of a clerk, while the contention of the executor is that he was employed as a broker, or agent — different principles of law appertaining to each.
The language of the contract is, that “ the party of the first part hereby employs the party of the second part as a sugar broker for the period of one year,” etc., and if that were all the stipulation it contained on the subject there would be no difficulty in solving the issue tendered. But the contract continues as follows, viz.: “to effect sales of all sugars and molasses that may be consigned to him, party of the first part; and in lieu of the usual commissions allowed on such sales, to pay the party of the second part $3000, payable $250 per month.” And it further provides that in consideration of said salary the party of the second part “ agrees to effect such sales and to exert all his personal influence to promote the interest of said party (of the first part) and to effect no sales of sugar and molasses except those consigned to him (the party of the first part).” And what, possibly, is the most significant provision of the agreement in this *1346 respect is that it declares that “the said party of the second part, further agrees to write all letters concerning the sugar and molasses market of said party of the first part, and to make out all account sales of sugar and molasses in all said transactions made by him for said party of the first part.” . ■
A clerk is one who hires his services to an employer at a fixed price under a stipulation to do and perfox'm some specific duty or labor which requires the exercise of skill. “The broker is he who is employed to negotiate a matter between .two parties, and who for that reason is the mandatory of both.” R. C. O. 3016.
The leading and essential difference between a clerk and a broker is that the former hires his services exclusively to one person, while the latter is employed to make bargains and contracts between other persons in matters of trade, commerce and navigation. For the services of the former there is a fixed stated salary, while for those of the latter, a compensation, commonly styled brokerage, is allowed. Story’s Agency, Sec. 26.
Putting the contract under consideration to this best, and what is' the result?
The very first stipulation of the agreement is that the obligor was to effect the sales of all sugars and molasses that may be consigned to the deceased, and no other, and for his services was to receive a stated salary. His agreement bound him to act for and represent but one party, and “to exert all his personal influence to promote the interest of said party,” and, to effect no sales of sugar and molasses except those consigned to the deceased.
He further agreed to write all letters concerning sugars and molasses * * * of said party of the first part, and to make out all account sales of sugar and molasses in all said transactions.
This analysis of the various tei-ms and provisions of the agreement clearly shows that plaintiff’s capacity was that of clerk, and not of a broker. Consequently, while it is true that the declaration of the contract is that the plaintiff was employed as a broker, eo nomine, yet it is elementary that courts of justice are bound to give legal effect to contracts according to their true intent and meaning. And it has been correctly observed by this court that “the character of a contract is to be found in the object the parties sought to accomplish, rather than in' the appellation they have given it.” Bynum vs. Armstrong, 5 N. S. 161. Also, that “the nature of an obligation *1347 depends entirely on the obligation it imports.” Louisiana State-' Bank vs. Orleans Nav. Co., 2 An. 303. Again-: “We are to look at the substance and essence of contracts rather than their form.” ■ Hutchins vs. Field, 10 La. 243.
Our conclusion being that plaintiff was a clerk of the deceased, and not a broker, the obligation of the latter was heritable and survived him, and is exigible against his executor and heirs, for the positive declaration of the code is that “ all contracts for the hire of labor, skill or industry, without any distinction, whether they can be performed by any other as by the obligor, unless there is some special agreement to the contrary, are considered as personal on the part of the obligor, but heritable on the part of the obligee.” R. C. C. 2007.
Certainly the instant contract contains no “special agreement to the contrary,” but in the most positive terms affirms its heritable character. The learned counsel of the defendant has industriously collated in his brief a large number of French and common law authorities favoring his theory; but however strong and persuasive they may be, they must yield to the positive flat of the written law.
This is necessarily the end of the case, as there is no force in the defendant’s contention that plaintiff had not, at date of Lanaux’s death, entered upon the duties of his engagement. Lanaux was a commission merchant engaged in the sale of sugars and molasses. His first engagement with plaintiff was made on the 1st of July, 1890, for one year. It was renewed for another term on the 1st of July, 1891, and it was again renewed on the 1st of July, 1892.
The plaintiff was paid in advance his salary for the months of July, August and September, 1892, and he was at the time of Lanaux’ death (on the 6th of September, 1892) absent temporarily on a sick leave. The engagement was complete and perfect notwithstanding the sugar market did not open, fairly, until after date of Lanaux’ death. The term of his contract had run well nigh three months, when the obligee died. It was during the course of his employment that Lanaux’ death occurred, therefore the cases cited by defendant’s counsel are not in point. Trifitin vs. Locke, 16 An. 19; Word vs. Winder, 16 An. 111.
Counsel further insists that the plaintiff was not sent away by the deceased in the sense of R. O. C. 2749, but that the obligee’s death determined his services, as well as the contract. But the law de *1348 dares that the obligee’s contract in such case is heritable; and the proof discloses that after Lanaux’ death plaintiff called upon the executor and notified him that he was at his service, and that his reply was that he could return to Pass Christian, where he had been staying, and report again about the 25th of October to sell sugars and molasses under his contract.
It is, also, in proof that plaintiff returned at the time indicated to the executor’s office, and proposed to go on with his work, when he was informed that he had changed his mind and could not retain him any longer, as he did not consider his contract good.
It is evident the plaintiff was turned away without any serious ground of complaint, and before his term of service had expired, in the sense of R. O. O. 2749; and that the executor is “ bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.”
But, in deciding this case as we have, and enforcing the plaintiff’s contract in its entirety, we do not intend to establish an inflexible rule for the decision of this class of cases — the instant case being somewhat sui generis.
Art. R. O. O. 2007 — upon which the case chiefly depends — must be construed with reference to other articles of the code upon the same subject-matter, and others which furnish rules for the interpretation of agreements generally.
And following this rule, we think the provisions of the following article applicable, viz.:
“ However general be the terms in which a contract is couched, it extends only to those things concerning which it appears that the parties intended to contract.” R. O. O. 1959.
Pursuing this theory, we are of opinion that the evidence shows that the magnitude and character of the business transactions of the estate of the deceased rendered plaintiff’s services reasonably necessary during the whole term of his contract, and that, consequently, he is equitably as well as legally entitled to require complete performance on the part of the executor.
The amount plaintiff received for the months of July, August and September, 1892 ($750), being deducted, he is entitled to receive the balance of $2250, with legal interest from judicial demand.
The judgment rendered in defendant’s favor must be reversed, and a decree pronounced in favor of the plaintiff.
*1349 It is therefore ordered and decreed that the plaintiff and appellant do have and recover of the defendant and appellee the sum of two thousand two hundred and fifty dollars, with legal interest from judicial demand and costs.