LAND, J.
Plaintiff alleged employment by defendants as general manager of the notion and furnishing department of their business, in the city of New Orleans, for the term of two years, commencing August 1, 1903, at a salary of $3,000 for the first year *34 and of $3,600 for the second year, and his discharge, without lawful cause and any serious ground of complaint, on January 9, 1904. Plaintiff sued for $6,600, with legal interest thereon from judicial demand, subject to a credit of $1,250 paid for services up to January 1, 1904.
Defendants, for answer, pleaded the general issue, admitting, however, the execution of the contract sued on, and, for further answer, denied that they ever dischhrged plaintiff as alleged; averring that, on the contrary, plaintiff quit their services, and had entered on other employment.
Defendants denied that plaintiff had complied with the obligations incumbent on him under the contract.
There was judgment in favor of plaintiff as prayed for, and defendants appealed. Plaintiff has answered, praying for an affirmance of the judgment, with 10 per cent, damages, as in case of a frivolous appeal.
The pivotal question in the controversy is whether plaintiff was discharged from service by defendants, or quit their employment on his own accord. This is a pure question of fact, which was decided in favor of plaintiff’s contention by the trial judge.
Plaintiff resided in the city of Baltimore, and was in the employ of North Bros. & Strouse, “shirt manufacturers,” of that city. Plaintiff became acquainted with defendants in the course of business dealings between the. two firms, and defendants in June, 1903, sought to secure the services of plaintiff; and the result was the written contract sued on, which was signed by defendant firm on July 1, 1903.
Under this contract the employment was to commence on August 1, 1903, and to continue for the full term of two years from said date, and for such further time as plaintiff might continue to serve defendant firm under the contract. Plaintiff’s salary was fixed at $3,000 for the first year, $3,600 for the second year, and, in the event of continuing for the third year, at $4,000 for said year. The duties and scope of plaintiff’s employment were set forth in the instrument as follows, viz.:
“That said A. Lehmann & Co. do hereby contract and agree to employ said Henry A. Curtis, as their general manager of their Notion and Furnishing Department of their place of business in the City of New Orleans, La.; as assistant to Henry Lehmann who has sole charge, said Curtis to have full charge of the traveling force of said firm in said department, and to have general control and direction of said department and its management.
“Said Curtis also to act as assistant to Mr. Henry Lehmann, in so far as he may be required to do so, and after the first year of his service under said contract, said Curtis shall also assist in so far as he may be required in the buying of said Notion and Furnishing Department.”
Plaintiff entered upon the discharge of his duties under this contract in August, 1903. It seems that in November, 1903, serious friction developed between the parties, culminating on November 10th in an order or instructions to plaintiff to take the road as a “drummer” or traveling salesman for defendant firm. On November 20th plaintiff addressed a communication to de fendant firm, to the effect that he declined to obey such instructions, because violative of the terms of his contract; at the same time stating that he was prepared to discharge • all the duties of his employment. Plaintiff testified that, in violation of the terms of his contract, he was required to discharge the duties of a subordinate clerk, was insulted in the presence Of other employes, and his character was defamed by the managing defendant in charge of the business. It appears from the evidence that plaintiff demanded of defendants damages for defamation, and incidentally that some kind of proceeding, not explained, was instituted in one of the city criminal courts.
In the midst of the controversy, plaintiff fell ill, and it was agreed that pending the settlement of the matters in dispute his absence should be sanctioned, and his salary continued. These matters were the claim *35 of damages, and the question of what were plaintiff’s duties under the contract of employment. Both sides were represented by counsel, who endeavored to end the contentions by amicable agreement between the parties. Plaintiff’s counsel made propositions, which were considered; and on January 4, 1904, counsel for defendants, in their behalf, replied that they would under no circumstances entertain the claim for damages, and that plaintiff was at liberty to return to work under, such orders as might be given him in the line of his business, and on his attorney’s avowal that no suit for damages would be instituted. Counsel for plaintiff on January 9, 1904, rejoined that the propositions contained in the letter of January 4th would not be considered, that al] propositions were withdrawn, and that plaintiff reserved all his legal rights in the premises. On the same day the plaintiff made a formal tender in writing of his services under the contract to the defendants, in the presence of two witnesses, who testified that the defendant to whom the letter was presented referred plaintiff to the attorneys of the firm. A witness for defendants testified that Hr. Henry Lehmann said:
“I have nothing to do with it any more. My attorneys have it in charge.”
Mr. Lehmann testified that he did not discharge the plaintiff.
This suit was filed on January 13, 1904, four days after the tender of services; and on February 2, 1904, defendants, through their counsel, expressed a willingness for plaintiff to return to their employment, and to carry out the obligations of his contract.
When the negotiations for a settlement of the differences between the parties proved abortive, plaintiff’s leave of absence expired, and he was bound to make an offer of his services, and defendants were equally bound either to accept or reject the tender when made. Counsel had endeavored in vain to adjust the matters in controversy, and the parties had been relegated to their legal rights in the premises. Under the circumstances, the reference of plaintiff to the attorneys of defendants was not serious, and can be considered in no other light than a refusal to accept the services formally tendered. Such a reference was an invitation to a lawsuit, or a mere evasion of the issue presented, which demanded a categorical answer. Judging from the letter of January 4th, defendants had resolved not to permit plaintiff to resume his work, save on the conditions therein named, which clearly changed and modified the terms of the original contract. There can be no real difference or distinction between the discharge of an employé, and the refusal to accept his services under the contract. The obligations between master and servant are reciprocal. The one cannot “send away,” nor the other “leave,” during the term of employment, unless good and just causes can be assigned. Rev. Oiv. Code, art. 2748. The law seeks to compel both, by the imposition of penalties, to abide by the terms of the contract of hiring, and to perform their respective obligations. Id. arts. 2749, 2750.
In the case of the discharge of the employé “without any serious ground of complaint” the master is bound to pay him the salary for the unexpired term; and the discharged employé may sue immediately for the whole time, and recover the full amount, though he has engaged his services to another. Shea v. Schlatre, 1 Rob. 319. Such discharged employé is under no obligation to return to service at the request of his late employer. Sherburne v. Cotton Press, 15 La. 360.
Defendants rested their case on a special denial of the alleged discharge, and cannot at the same time urge that they had “serious ground of complaint,” that would have justified the discharge of the plaintiff, had they thought proper to do so. A mere denial *36 that plaintiff had complied with the obligations incumbent on him under the contract raised no such issue.
We think that plaintiff asserted no more than his legal rights under the contract. He was employed as “general manager” of a department, and not as a stock clerk or drummer or general utility man about the establishment. He did not engage to obey all orders of the defendants, nor to subject himself absolutely to their control. Plaintiff did not sell his time, but services for special purposes.
Defendants complained that the judgment condemns them to pay interest on the amount of $1,250 paid on account of salary to January 1, 1905. We do not think that the judgment can be so construed, as the credits must be imputed as of dates of payment. Plaintiff’s suit was really for salary accruing after the payments had been made, and the credits reduced his demand to the proper amount.
Plaintiff’s counsel contends that several witnesses for defendants, who were “sworn on the Bible,” in accordance with article 478 of the Code of Practice, were not properly sworn in accordance with the supposed religious tenets of their race. These witnesses did not object to the form of the oath or to the manner of its administration, nor were they asked any questions on the subject-matter by the court or counsel. In the absence of contrary evidence, the oath voluntarily taken in due legal form by a witness must be considered as binding on him in conscience as well as in law. The Code of Practice, after providing that “witnesses must be sworn on the Bible, in open court,” further declares that, “if the religious opinions of a witness are opposed to his taking an oath, his affirmation of the truth of his testimony shall suffice.” Code Prae. arts. 478, 479.
The Code does not provide for the special case of a witness who has no religious scrupies against taking an oath, but does not consider an oath taken “on the Bible” as binding on his conscience. In such cases the common law permitted the oath to be so administered as to suit the conscience of the witness, not regarding the mode of swearing as the material part of the oath. 3' Jones, Law of Evidence, 730. The same writer states that “the court, jn its discretion, may inquire of any witness what are the ceremonies observed in swearing, which he deems most obligatory, and may adopt such forms,” and cites People v. Green, 99 Cal. 564, 34 Pac. 231, as holding that it is' not reversible error to refuse to administer a special oath to a Chinese witness. Id. 733, and notes.
The question is one of mode or form, and not of substance, and the legal presumption is that the witnesses were .properly sworn; there being no evidence showing or tending to show that the witnesses considered any other mode of swearing as more obligatory than the one prescribed by the Code.
It is evident that this is not a proper case' for the awarding of damages for a frivolous appeal.
Judgment affirmed.