(82 South. 889)

No. 22370.

## DUNBAR v. ORLEANS METAL BED CO.

(June 30, 1919. On Application for Rehearing, Oct. 14, 1919.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT ☞36—SALARY RECOVERABLE ON DISCHARGE WITHOUT CONDITIONS.

According to the Civil Code, and numerous decisions of this court, interpreting it, if a laborer (or clerk), hired for a certain time be sent away, without any serious ground of complaint, before the time has expired, he is entitled to recover the whole of the "salaries" that he would have received, had the full term of his service arrived. The right of action for the recovery of the entire amount called for by the contract accrues immediately; the employer has no power, as a condition precedent to paying him, thereafter to require that he work out the term for which he was employed; nor is his right of recovery, under his first employment, affected by the fact that he engages his services for the unexpired term to another employer; nor is it necessary that he should tender his services to the employer by whom he has been discharged, or put him in default, since the whole amount of the salary called for by contract becomes due and exigible upon and by reason of his discharge.

2. MASTER AND SERVANT ☞6 — BURDEN OF PROOF AS TO SUBSEQUENT ORAL AGREEMENT OF EMPLOYMENT ON MASTER.

Where a written contract calls for the payment of a fixed salary for a fixed time, and the employer, sued thereon, relies on a verbal agreement, entered into in his interest, and with no apparent consideration moving to the employé, the burden of proof, to establish the agreement in all its parts, rests upon the employer.

3. MASTER AND SERVANT ☞3(2)—PARTIES' INTERPRETATION OF CONTRACT OF EMPLOYMENT ADOPTED.

Where, during the execution of a contract of employment, the parties thereto have accepted and acted upon a certain interpretation of one of its provisions, a court will not, in a litigation subsequently arising, readily adopt another interpretation, more favorable to one of the litigants.

*(Additional Syllabus by Editorial Staff.)*

4. MASTER AND SERVANT ☞31—WHAT CONSTITUTES DISCHARGE.

Any form of words, whether written or verbal, which conveys to the servant the idea that his services are no longer required and will not be accepted, will constitute a discharge.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Suit by Fred M. Dunbar against the Orleans Metal Bed Company to recover salary and expenses. Judgment for plaintiff, and defendant appeals, and plaintiff, answering, prays that the award be increased. Judgment amended and affirmed.

L. A. Hubert, of New Orleans, for appellant.

Charles Rosen, of New Orleans, for appellee.

## Statement of the Case.

MONROE, C. J. The evidence adduced herein discloses the following facts:

In 1912 plaintiff was employed by defendant, under a verbal contract and for no fixed time, as a traveling salesman, and (so far as appears), with no reason to complain of him, defendant discharged him, on two weeks' notice. In December of the following year, desiring to re-employ him, two of its officers called on him for that purpose, and, saying that he had been "knifed" once before, he insisted as a condition of his accepting the re-employment, upon a written contract for a fixed term, and on December 22, 1913, he was re-employed under a contract reading, in part, as follows:

" * * * The said * * * company hereby agrees to employ Mr. F. M. Dunbar as salesman * * * for a period of two years, commencing January 1, 1914, and ending December 31, 1915, at a salary of $150 per month, payable at the end of each month, and also to pay him $40 per week for expense money, payable at the beginning of each week. * * * In consideration of the above, Mr. F. M. Dunbar agrees to travel not less than 42 weeks in each year, unless ill, and to use his best efforts to sell their goods and promote the interests of the * * * company."

Working under that contract, defendant appears to have acquiesced in the interpretation that he was to draw no money for expenses save when actually traveling, and in September, 1914, upon the representation that business was dull, he consented that, for two or three months, his salary should be reduced from $150 (as stipulated in the contract) to $125 per month.

On March 21, 1915, being then at the city of Monroe, in the discharge of the duties for which he was employed, he received from defendant a letter, bearing date March 20th, and reading:

"We are in receipt of your two small orders for Pollack and Olla, La. Same shall have our prompt attention, when advised when to be shipped. We note that you do not write us a word concerning the business outlook, nor where we could reach you. In view of the fact that business is so exceedingly 'rotten' that we have got to retrench, and I am instructed to say to you that, on Wednesday, March 31st, we shall have to lay you off indefinitely; that is, until business justifies the expenditure incidental to the position you have with the company; after the above date, we shall hold no claim on your services. We are also calling in one of the other traveling men whose expenses far exceed the business produced. The fact that we have carried all our men on the pay roll for the past six months, and, the results of their efforts resulting in practically nothing in the way of returns, the management has fully decided to carry no more dead weight. We regret, exceedingly, that poor business forces this after mature deliberation.

"Yours very truly,
                 "Orleans Metal Bed Co.,
"[Signed]              J. L. Selman, Sec."

Continuing his work in the country through the month of March, plaintiff returned to New Orleans on April 1st and consulted his legal adviser, upon whose advice on April 2d he wrote to defendant as follows:

"In reference to your letter of the 20th inst., in which you notify me that, on March 31st, you will have to lay me off indefinitely, and that, after that date, you will hold no claim on my services, I construe this notification to be that you dispense with my services from and after that date and discharge me from your employ. I returned to this city on yesterday, and now beg leave to notify you that I have a contract of employment with you up to, and including, December 31st of this year, and I hold you to this contract. I have always been ready and willing to comply with this contract, and have in all respects complied therewith, and I consider your dismissal of me unjust and unwarranted. I consider myself entitled to the full amount provided by my contract; that is, nine months' salary, from April 1 to December 31, 1915, at $150 per month, besides $65, due me on March salary, and herewith make demand for same. Please let me hear from you at once.
"Yours truly, [Signed] Fred M. Dunbar."

As plaintiff had received no reply to the foregoing up to April 6th, his legal adviser on that day wrote to defendant reciting the facts as stated in plaintiff's letter, reiterating the demand therein contained, and notifying defendant that, unless it was complied with, suit would be brought to enforce it, and also to recover expense money at the rate of $40 per week for nine months. The letter so written brought about one or two interviews between defendant's attorney, to whom it was communicated by defendant and plaintiff's attorney, and defendant's attorney seems to have felt that it would be wise for his client to withdraw from the position that it had taken. On April 8th, therefore, he wrote a letter to plaintiff's attorney (which reached him on April 10th) as follows:

"In answer to your letter of the 6th inst., to the Orleans Metal Bed Co., Ltd., in regard to the claim of Mr. Fred M. Dunbar, and to confirm what I told you during our conversation this morning relative thereto, I beg leave to

state that my clients are ready to send Mr. Dunbar back on the road at once, if he will call on them for instructions, or, rather, to talk over matters pertaining to the business. It is my opinion that this matter can be satisfactorily adjusted by a personal interview between Mr. Dunbar and his employers, and I know that, by your good judgment, you will advise him rightly."

After one or two other letters, the correspondence closed with the following, of date April 17, 1915, from defendant to plaintiff, to wit:

"Our attorney, Mr. Hubert, informs us that you, through your attorney, Mr. Rosen, refuse to further carry out your obligations under your contract of employment. We wish to inform you that it was never our intention to discharge you (knowing full well what our rights and obligations were under your contract), but simply to exercise our right to lay you off while business was poor, in order to save traveling expenses—just as we had done before, notably in the months of October, November, December, and part of January last. There was no question of intention of depriving you of your salary in the meantime, and you could not construe our letter, to which you refer, as meaning any such thing. If you had called on us, as you suggested in your letter in answer to ours, you would have understood our position, and what we meant, and thus have avoided this misunderstanding. Business is picking up lately, and we need you on the road at once. You are therefore notified to call at our office next Monday morning to make arrangements for starting at once. Should you fail to call before 12 M. Monday [April 19, 1915], we will consider you have abandoned your contract, and we will put some one on the road in your place."

This suit was instituted soon after the receipt of the above-quoted letter, the claim being for salary, at $150 per month, from April 1 to December 31, 1915, $65 balance due on salary for March, and $40 per week for expenses during the period mentioned.

The defenses relied on are that plaintiff was not discharged, that his salary was reduced, by consent, to $125 per month, and that the balance due for March was $55 (instead of $65).

On the trial there was a futile attempt on the part of defendant's secretary and president to make it appear that the letter, written to plaintiff on March 20th, was not intended as a discharge, and that, in writing, "on Wednesday, March 31st, we shall have to lay you off indefinitely; that is until business justifies the expenditure incidental to the position you have with the company; after the above date we shall hold no claim on your services," and that "the management has fully decided to carry no more dead weight," and "regret exceedingly that poor business forces this after mature deliberation," nothing more was meant than that plaintiff should come off the road for a while in order to save his traveling expenses. The attempted explanation makes it reasonably clear to us that a light dawned on defendant's officers, after they had taken advice upon the letter from plaintiff's attorney of April 6th, and that they then concluded, not that they had not discharged plaintiff, but that they would take him back. It does not explain why they had written that they would hold no claim on plaintiff's services after March 31st, if it was the intention to continue his salary, or why it was necessary to refer to the carrying of "dead weight," and "to regret exceedingly" "after mature deliberation," etc., in the entirely commonplace matter of calling in a salesman, temporarily, in order to save his traveling expenses. Plaintiff recalled that he had drawn for $10, while on his trip, and admitted that it was to be deducted from the item of $65, claimed as balance due on his salary for March. He also admitted that he had not made any claim for traveling expenses when not traveling; and, in effect, that his consent to the reduction of his salary, for two or three months, might be considered as covering the period from October, 1914, to March 31, 1915, inclusive; and we see no reason for extending it beyond the date last mentioned, when his employment

was so abruptly terminated, the more particularly as it was, so soon after, discovered that the business was picking up, and that he was needed at once on the road. There was judgment in the court a qua in favor of plaintiff in the sum of $1,180, for salary at $125 per month from April 1 to December 31, 1915, inclusive, plus $55, balance due on salary for March, with interest and costs. Defendant has appealed, and plaintiff has answered, praying that the award be increased by allowing salary at $150 per month for 9 months, and expense money at $40 per week for $39^2/7$ weeks; also praying for recognition of privilege on defendant's assets; but, as the record discloses no assets, we assume that that prayer may be disregarded.

[1, 4] Any form of words, either written or verbal, which convey to the servant the idea that his services are no longer required and will not be accepted, will constitute a discharge. 20 A. & E. Enc. of Law, 26; 26 Cyc. 987. If a traveling salesman, employed at a specified salary, for a fixed time, upon receiving a letter from an officer having authority to speak for the corporation employing him, saying:

"We have got to retrench, and I am instructed to say to you that, on Wednesday, March 31st, we shall have to lay you off indefinitely; that is, until business justifies the expenditure incidental to the position you have with the company; after the above date, we shall hold no claim on your services. * * * The management has fully decided to carry no more dead weight. We regret that poor business forces this after mature deliberation"

—should fail to understand that the intention was to dispense with his services from and after March 31st, we are inclined to the opinion that his dullness of wit would, of itself, entitle his employer to discharge him for cause. The language quoted conveys that meaning to our minds, and the evidence satisfies us that it was intended to convey it to the mind of the plaintiff; and hence we hold that he properly considered himself discharged from and after the appointed time.

It is not pretended that defendant had any serious ground of complaint against plaintiff, or any ground whatever, the admitted purpose of the action taken being to save "the expenditure incidental to the position" held by plaintiff, which was an insufficient ground upon which to base such action, since defendant had contracted with plaintiff to make that expenditure, and it did not lie with it to repudiate its contract because it thereafter concluded that it would be better to save the expenditure than to make it. In fact, the law intervenes and compels defendant to make the expenditure, even though it does not require plaintiff, after being discharged, to render the service which the expenditure was intended to compensate. According to the Civil Code, and numerous decisions of this court interpreting it, if a laborer (or clerk), hired for a certain time, be sent away, without any serious ground of complaint, before the time has expired, he is entitled to recover the whole of the "salaries" that he would have received, had the full term of his service arrived. C. C. art. 2749. The right of action for the entire amount called for by the contract arises immediately, and the employer by whom he is discharged has no power, as a condition precedent to paying him, thereafter to require that he work out the term for which he was employed. Sherburne v. Orleans Cotton Press, 15 La. 360. Nor is his right of recovery under his first employment affected by the fact that he engages his services for the unexpired term to another employer. Shea v. Schlatre, 1 Rob. 319. Nor is it necessary that he should tender his services to the employer by whom he was discharged, or put him in default, since the whole amount of the salary called for by his contract becomes due and exigible upon and by reason of his discharge. Tete v. Lanaux, Ex'r, 45 La. Ann. 1343, 14 South. 241;

Curtis v. Lehmann & Co., 115 La. 40, 38 South. 887; Daspit v. D. H. Holmes Co., 120 La. 92, 44 South. 993; Camp v. Baldwin-Melville Co., 123 La. 258, 48 South. 927.

[2, 3] Counsel for defendant says in his brief that plaintiff, having agreed that his salary should be reduced to $125, has no right to claim the $150, called for by the contract, until after notice of such intention. The written contract, however, called for $150, and the burden rested on defendant to prove the verbal agreement by which the salary was reduced, in defendant's interest; plaintiff testified that, at defendant's request, he agreed to submit to a reduction to $125 for two or three months, and, as more time than that had expired when he was discharged, it appears to us that he had then more than complied with his agreement, which was entirely voluntary and without consideration in the beginning. According to the evidence, plaintiff had never insisted upon being paid $40 per week for expenses, save when actually traveling, and we are of opinion that he cannot now be heard to place a different construction on his contract.

It is therefore ordered and decreed that the judgment appealed from be amended, by increasing the amount of the award from $1,180 to $1,305, and by allowing legal interest upon the whole amount from judicial demand. It is further decreed that, as thus amended, said judgment be affirmed, the defendant to pay all costs.

On Application for Rehearing.

PER CURIAM. As appears from the opinion, it was the intention of the court to give judgment in favor of plaintiff for nine months' salary, at $150 per month, plus $55, balance due for salary for the month of March, 1915. By error of calculation, patent on the face of the opinion, the amount awarded was $1,305. It should have been $1,405.

It is therefore ordered that the decree as handed down be amended, by substituting $1,405 in place of $1,305, and otherwise affirmed.

Defendant's application for rehearing is refused.