4 So.2d 649

STATE ex rel. NOBLES v. BIENVILLE PARISH SCHOOL BOARD.

No. 36065.

April 28, 1941.

On Rehearing Nov. 3, 1941.

T. Kinnebrew, Dist. Atty., of Homer, and Goff, Goff & Caskey, of Arcadia, for defendant and appellant.

A. S. Drew, of Minden, and Turner B. Morgan, of Shreveport, for plaintiff and appellee.

PONDER, Justice.

The plaintiff, H. L. Nobles, was employed by the Bienville Parish School Board as principal of the high school at Gibsland for the years 1938–39 and 1939–40 at a yearly salary of $2,150. In each instance the contract was issued to the plaintiff for that particular school year only, and the plaintiff served in the capacity of principal during the two years. On July 2, 1940, at the regular meeting the school board adopted a resolution dismissing the plaintiff as principal of the high school and as employee of the school board, reciting therein that the action was taken due to the lack of cooperation among the teachers of the school and for the general good of the school and the community. Shortly thereafter the Superintendent of Schools advised the plaintiff by letter of the action of the school board, and thereupon the plaintiff informed the Superintendent that he was ready and willing to perform his duties as principal of the school, and he would be ready to report as principal at the opening of school, that he had not been legally discharged, and that unless he was allowed to continue his duties as principal of the school he would be forced to protect himself as the law provides. After the adoption of the resolution by the school board, dismissing the plaintiff as principal of the school, the school board employed V. W. Barber, who is presently serving as principal of the school. The plaintiff instituted this suit, the purpose of which was to compel the school board to reinstate him as an employee of the school board and as principal of the Gibsland High School at a salary of $2,150 per year. The plaintiff also seeks to recover the salary of $2,150 to be paid in monthly payments as is customarily paid by the board. After this suit was filed a majority of the members of the school board, at an informal meeting, offered to employ the plaintiff as assistant principal of another high school in Bienville Parish for the year 1940–41 at a salary equal to that formerly paid him as principal of the Gibsland High School in an effort to compromise this litigation, but the effort was unsuccessful. In defense to the suit the school board denies that the plaintiff was a probationary teacher at the time the resolution of July 2, 1940, was adopted dismissing the plaintiff. Upon trial of these issues the lower court gave judgment ordering the reinstatement of the plaintiff as principal of the Gibsland High School for the school year 1940–41 at a salary of $2,150 per year to be paid in the customary manner, and in the event the school board cannot reinstate the plaintiff, that in that event the school board be ordered to pay the plaintiff the sum of $2,150 in the same manner and on the same dates that it would have been paid him had he performed the duties as principal of the high school, with interest at 5% per annum on the past due instalments from the date each is due. The school board has appealed.

This suit presents two questions: First, whether the plaintiff had acquired the status of probationary teacher at the time of his dismissal. Second, whether he was lawfully discharged.

The pertinent part of the Teachers' Tenure Act 58 of 1936 provides as follows:

"The word 'teacher' as used in this section shall be construed to mean any employee of any parish school board who holds a teacher's certificate, and whose legal employment requires such teacher's certificate.

"Each teacher shall serve a probationary term of three years, such probationary term to be reckoned from the date of his first appointment in that parish in which the teacher is serving his probation. During said probationary term the parish school board may dismiss or discharge any probationary teacher upon the written recommendation, accompanied by the valid reasons therefor, of the superintendent of schools of that parish."

From a mere reading of the above quoted part of the Teachers' Tenure Act it is apparent that the probationary term is fixed for a period of three years beginning at the date of the teacher's first appointment. The Act provides the method by which a teacher may be dismissed during this period of time. It is conceded in the agreed statement of facts that no written recommendation for the dismissal of the plaintiff was made by the Superintendent of schools, accompanied by valid reasons therefor, to the school board. This statutory requirement was not complied with. It is clear from the language of the statute that it is a condition precedent to the school board's right to dismiss a probationary teacher that this written recommendation must be made by the Superintendent accompanied with valid reasons therefor. While the question presented has not been directly passed on by the appellate courts of this State, the Teachers' Tenure Act has been considered on several occasions.

In the case of Andrews v. Union Parish School Board, La.App., 184 So. 574, it was stated in effect that even during the probationary term a teacher may not be dismissed save upon the written recommendation, accompanied by the valid reasons therefor, of the Superintendent. The case was reviewed by this court on certiorari, Andrews v. Union Parish School Board, 191 La. 90, 184 So. 552, wherein we stated to the effect that it is unquestionably true that the probationary term or apprenticeship period for teachers is fixed by the legislature at three years and such teachers cannot be discharged during this period of time except for cause.

In the case of Andrews v. Claiborne Parish School Board, La.App., 189 So. 355, it is stated in effect that the only method provided by law for the discharge of a probationary teacher is laid down in Act No. 58 of 1936 to wit: for the superintendent to recommend in writing to the board the dismissal of the teacher, with supporting valid reasons therefor, and the board's positive favorable action on the recommendation.

In the case of State ex rel. Kennington v. Red River Parish School Board, La.App., 193 So. 225, 228, the court stated:

"It is clear from the language of this statute that as a condition precedent to a school board's dismissal of a probationary teacher, the superintendent of the parish must submit to the board 'written recommendations' for such dismissal, accom-

panied by valid reasons therefor. These should be signed by him officially. It is contended that such reasons need not be in writing, but may be assigned orally. We do not concur in this construction of the quoted law. We think the law-maker intended that the charges against the teacher, upon which his or her dismissal is asked, should be in the same form and of the same dignity as the recommendation itself. They are, in reality, companion acts, should be in writing and preserved in the board's archives. If this were not true, in many cases neither the teacher nor the public would know why a dismissal occurred. To effect dismissal of a probationary teacher, the law has definitely placed upon both the school board and the superintendent, elements of responsibility which must be specifically discharged by each. Such responsibility may not be shifted."

█ The fact that the school board employed the plaintiff by the year or for a period of a year is of no moment. To conclude otherwise would defeat the purpose of the Teachers' Tenure Act. In other words, it would permit school boards to fix a probationary term in derogation of the expressed provisions in the Act. The Act expressly provides that the probationary term of three years begins from the date of the first appointment or employment of the teacher irrespective of whether the contract of employment is for one year or more.

The defendant-appellant contends that until a teacher acquires the status of a permanent teacher the school board and the teacher may fix the limit of the period

of employment. It is argued that this was done in the instant case by the contract of employment for one year. It is contended that at the close of the school year of 1939—40 the plaintiff's relation with the school board ceased and that thereafter the school board was under no further obligation to re-employ him.

█ The statute fixes the probationary term at three years beginning from the date of the first appointment of the teacher. There is no provision for the employment of a probationary teacher for a different period of time. This in our opinion clearly shows that the Act contemplates that the employment should cover a period of three years. The period of employment being fixed by statute the school board is without authority to change it by contract or otherwise. To hold that school boards could escape the provisions of the Act by employing probationary teachers for a shorter period of time would render the provisions of the Act with reference to probationary teachers meaningless and permit the dismissal of probationary teachers without cause in derogation of the provisions of the Act.

The plaintiff-appellee has answered the appeal asking that the judgment be amended so as to delete therefrom that part of the judgment which provides that in event that the school board cannot reinstate the plaintiff, in such event the school board is ordered to pay the plaintiff $2,150.

It is contended that this alternative right set out in the judgment has no basis in fact or authority in law.

Since we have arrived at the conclusion that the plaintiff was illegally discharged, he is entitled to a judgment reinstating him to his original status as Principal of the Gibsland High School. The present scholastic year will complete the plaintiff's probationary term and place him in line for employment as a permanent teacher provided the provisions of the Act are complied with. To award the plaintiff the amount of the salary without reinstating him to the status from which he had been illegally dismissed would not give the relief that the plaintiff is entitled to.

For the reasons assigned the judgment is amended so as to order the reinstatement of the plaintiff as principal of the Gibsland High School for the year 1940–41 at a salary of $2,150 per year. As amended the judgment is affirmed at appellant's cost.

HIGGINS, Justice (concurring).

As the plaintiff was a probationary teacher in the public schools, he was protected, under the Teachers' Tenure Law, from being dismissed without legal cause. The Board failed to follow the procedure set forth in the statute and, therefore, the dismissal of the plaintiff was illegal.

For these reasons, I concur in the decree.

On Rehearing.

FOURNET, Justice.

H. L. Nobles instituted mandamus proceedings against the Bienville Parish School Board, through its superintendent and president, seeking to compel the board to reinstate him in his status as principal

of the Gibsland High School for the year 1940–41 at a yearly salary of $2,150, payable on a monthly basis, on the ground that he had been illegally discharged while serving his probationary term, in contravention of the provisions of Act No. 58 of 1936.

The case is now before us for reconsideration of our decree handed down on April 28, 1941, wherein the relief sought by the relator was granted.

From the agreed statement of facts found in the record it appears that the relator, who had been employed as principal of the Gibsland High School for the school terms of 1938–39 and 1939–40, was summarily discharged under a resolution adopted by the Bienville Parish School Board on July 2, 1940, without any written recommendation therefor having been given by the parish superintendent of schools. The relator was advised of the board's action by the superintendent on July 6 following and, despite the fact that he made formal protest against this action in a letter dated August 12, stipulating that unless he was reinstated he would be compelled to take court action, he found, upon his return to resume his duties on the day the Gibsland High School opened, that they were being performed by V. W. Barber, who had been appointed to succeed him. This court action followed.

It is contended by the respondent board that we erred in our holding that the relator, at the close of the school year of 1939–40, was subject to the provisions of the Teachers' Tenure Act (Act No. 58 of 1936), for the reason that relator's employment

was under contracts for each of the two years he served, his services terminating at the end of the separate school years under the very terms of these contracts, as authorized by the same legislature adopting the Teachers' Tenure Act, i. e., by the legislature's adoption of Act No. 59 of 1936, and, moreover, that by signing these contracts the relator waived whatever rights he may have had under Act No. 58 of 1936, citing as authority therefor Article 11 of the Revised Civil Code.

These two acts were enacted for the purpose of amending Act No. 100 of 1922 entitled "An Act To provide a State Board of Education and Parish school boards, defining their duties and powers, and providing for the administration and supervision of the public schools of Louisiana," Act No. 58 amending Section 48 thereof and Act No. 59 amending Sections 20 and 27. These acts, therefore, must be read in the light of the act they amend and must be construed so that the provisions of each are given effect, if that result is at all possible without violating the object of the act. Articles 17 and 18 of the Revised Civil Code; Gas Light & Banking Co. v. Nuttall, 19 La. 447; State v. Allison, 146 La. 495, 83 So. 778; State v. Coco, 152 La. 241, 92 So. 883; Thibaut v. Board of Commissioners of Lafourche Basin Levee Dist., 153 La. 501, 96 So. 47; Bradley v. Swift & Co., 167 La. 249, 119 So. 37; and City of Shreveport v. Urban Land Company, Inc., 177 La. 357, 148 So. 256.

The legislature's purpose in enacting Act No. 58 of 1936 was to amend Section 48 of Act No. 100 of 1922 in order that the word "teacher" might be defined and provision made for a probationary term during which a teacher must serve before classified as a regular or permanent teacher. Provision is also made for the specific manner in which either a probationary or a permanent teacher may be removed or dismissed. Act No. 59 of 1936, on the other hand, re-enacting and amending Sections Nos. 20 and 27 of Act No. 100 of 1922, provides, in part, that: "The parish school board shall determine * * * the number of teachers to be employed, and select such teachers from nominations made by the parish superintendent, provided that a majority of the full membership of the board may elect teachers without the endorsement of the superintendent. The board shall have authority to employ teachers by the month or by the year, and to fix the salaries of the teachers * * *."

These two acts, when read together, consideration being given to the purpose sought to be accomplished by the act they amend, are not inconsistent. Any person who is employed as a regular teacher in any of the parish schools of the state thereupon enters into the school system of the state and becomes subject to all of the laws pertaining to that particular class of persons. It is immaterial whether the person is hired to teach by the month or by the year; once a part of the school system of the state, he is subjected to the provisions of Act No. 58 of 1936 making it mandatory that he serve a probationary term of three years before he can be classed as a permanent teacher. These provisions are read into his contract and form a part

thereof, the same as do the remaining provisions of the act. Thereafter his removal or dismissal can only be accomplished in the manner specifically outlined in the same act, i. e., *"upon the written recommendation, accompanied by the valid reasons therefor, of the superintendent of schools of that parish."* (Italics ours.)

In the instant case the relator was dismissed by the school board without a written recommendation of the superintendent of the Bienville Parish School Board, accompanied by valid reasons therefor, as required by the act, and he was, therefore, illegally removed. Andrews v. Union Parish School Board, 191 La. 90, 184 So. 552; State ex rel. Kundert v. Jefferson Parish School Board, 191 La. 102, 184 So. 555; and State ex rel. Kennington v. Red River Parish School Board, La.App., 193 So. 225.

It is also contended by the respondent board that we erred in our holding that the relator was "entitled to a judgment reinstating him to his original status as Principal of the Gibsland high school" for the reason that it is impossible for the relator to be reinstated for the school term of 1940–41, that term having already expired, and that, even if the relator is entitled to be reinstated as a high school principal, there is no law requiring that he be maintained at any particular school.

There is no merit to these contentions. We appreciate the fact that the relator cannot be reinstated in the actual performance of his duties for the school year of 1940–41. Nevertheless, having been illegally dismissed, he is entitled to his salary for that term and until he is reinstat-

ed, to be paid in the manner and at the rate he was receiving it at the time of his dismissal. See Sherburne v. Orleans Cotton Press, 15 La. 360; Shea v. Schlatre, 1 Rob. 319; Tete v. Lanaux, Ex'r, 45 La. Ann. 1343, 14 So. 241; Curtis v. Lehmann & Company, 115 La. 40, 38 So. 887; Daspit v. D. H. Holmes Company, 120 La. 86, 44 So. 993; Camp v. Baldwin-Melville Company, 123 La. 257, 258, 48 So. 927; Dunbar v. Orleans Metal Bed Company, 145 La. 779, 82 So. 889; and Hill v. American Co-operative Ass'n, 195 La. 590, 197 So. 241. Furthermore, a mere reference to our decree will show that we simply reinstated the relator in his status as principal of the Gibsland High School. Whether or not he is entitled to be maintained in that position is not at issue here.

For the reasons assigned, our original decree handed down April 28, 1941, is reinstated and made the final judgment of this court. Appellee is to pay all costs.