MORIAL, Judge
(dissenting with written reasons).
On June 13, 1973, the Jefferson Parish School Board passed a resolution abolishing the position of “second assistant principal” at each school and at each platoon session. In effect, this resolution caused a reduction in the number of assistant principals from eighteen to nine; of the nine that lost their jobs, four were nontenured in that position and were reassigned to positions lesser in rank and lower in salary. The four so affected are the petitioners who sought a writ of mandamus and/or an injunction directing that the Jefferson Parish School Board reinstate them to the positions they held as of June 13, 1973, with all the accompanying emoluments of office, contending that the June 13th resolution was illegal because it was not a valid abolition of a position, but merely a demotion via reduction of the number of persons in that position, and as such, it violated the provisions of the teacher tenure law, specifically LSA-R.S. 17:442 which are applicable by virtue of LSA-R.S. 17:444. LSA-R.S. 17:442 provides :
“Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor.
“ * * * »
LSA-R.S. 17:444 provides in part:
«* * *
“During the probationary period in the position to which promoted a teacher shall not be disciplined, removed or demoted to the lower position from which he or she was promoted except in compliance with the provisions of RS. 17:442. * * * ” (emphasis supplied)
« * * * »
Petitioners also filed a supplemental petition alleging that the action of the school board was willful, arbitrary and in bad faith. The trial judge found no bad faith on the part of the school board, but ordered petitioners reinstated to their positions as assistant principals retroactive to June 13, 1973, with all the accompanying emoluments, finding in fact that no such position as “second assistant principal” ever existed and, therefore, the abolition of the position resulted in the demotion of the petitioners in contravention of the above quoted section of the teacher tenure law.
On July 14, 1970, Mr. Julius Palone was appointed assistant principal in the Jefferson Parish school system. He was ultimately placed at Bonnabel High School, where he was designated as assistant principal in charge of pupil services. At the time of the abolition of his position, he was approximately thirty days away from fulfilling his three year probationary term established by the teacher tenure law and *213 acquiring tenure as an assistant principal. Mr. Palone testified, which testimony was confirmed by the defendants, that prior-to June 13, 1973, he had not received any notice that such action was pending before the board, nor had any recommendation that he be discharged or demoted been made by the superintendent prior to the Board’s action. Mr. Palone was present at the June 13th meeting as were most of the assistant principals. He stated that at the time the resolution was passed he did not know which of the eighteen assistant principals were “second assistant principals,” or who was to be affected by the resolution. On the morning of June 14, 1973, Mr. Palone was called by a representative of the superintendent’s office and advised not to report to school that morning, but to attend a meeting that afternoon in the superintendent’s office. At that meeting, Mr. Palone and the other petitioners learned that their positions had been abolished, and that they would be returned to their last tenured positions. At that time Mr. Palone was serving as an assistant principal in summer school and was concerned whether or not he would be allowed to stay on during the summer session. On June 18, 1973, he was informed by Mr. Sis-ung, the superintendent, that the legal questions concerning his tenure would have to be resolved before he could answer that question. Subsequently, Mr. Palone was notified his summer services would not be required after June 30, 1973. On July 30, 1973, he received official notice of his transfer from assistant principal to teacher at Metairie Middle School, and on August 23, 1973, he received notice of his transfer from teacher to head coach, his previously tenured position. As a result of these transfers, Mr. Palone now earns approximately $6,200.00 less per year than he did as an assistant principal. Before this last transfer was completed, Mr. Palone had been offered a position as disciplinarian at Bonnabel High School, but he informed the superintendent that he would only accept the position under protest. Subsequently, the superintendent withdrew his recommendation that Mr. Palone be appointed disciplinarian and, instead, he was appointed head coach.
On July 14, 1970, Mrs. Mildred Heard, another petitioner, was appointed assistant principal at L. W. Higgins High School. She was designated assistant principal in charge of academic services. After the school board’s resolution she was transferred to the position of principal of West-wego Elementary School which resulted in a $4,000.00 per year reduction in pay. Mrs. Heard’s previously tenured position was that of teacher. Although she received a reduction in pay, her transfer was to a higher position than her last tenured one. Like Palone, she received no notice of the impending action of the school board, nor was any recommendation submitted by the superintendent asking that she be discharged or demoted. Mrs. Heard learned that her position had been abolished at the June 14, 1973 meeting in the superintendent’s office. On June 25, 1973, Mrs. Heard was notified that her position as assistant principal had also been abolished in conjunction with the termination of her permanent position. Mrs. Heard testified that after her dismissal, a classroom teacher was made a principal for the remainder of the summer school session.
Mr. Gerald Heslin, another plaintiff had been appointed as an assistant principal on July 14, 1970, and was also on the verge of acquiring tenure when his position was abolished. After the school board’s resolution he was transferred to Bonnabel High School, first as a teacher, his previously held tenured position, and then as a discipline coordinator, the job which had originally been offered to Mr. Palone. Mr. Heslin’s resulting reduction in pay amounts to $5,200.00 per year, and like all other petitioners, he received no prior notice that any action was pending before the school board and no recommendation was made by the superintendent that he be discharged or demoted. He first learned that his position was abolished at the June 14th meeting with the superintendent. In contrast to *214 Palone and Heard, however, Mr. Heslin had no summer commitment which was affected by the school board’s resolution.
Mr. Frank Dalferes was the only one of the petitioners who was not on the brink of acquiring tenure as an assistant principal at the time of the school board’s action. He had been appointed to his position on August S, 1972 from his tenured position as head coach. At the June 14, 1973 meeting in the school board office, he specifically asked that he not be returned to his previously tenured position because of the disruption his reassignment would cause in the athletic training programs at Metairie Middle School. As a result of his request, he was made a discipline coordinator at East Jefferson High School, which resulted in a $5,200.00 reduction per year in salary. At no time did he receive any notice of the pending action before the school board, nor did the superintendent make a recommendation that he be demoted or discharged before June 13, 1973.
The issue in this case is twofold: Can the school board validly abolish a position, and if it can, was a position validly abolished in this case ?
Our jurisprudence has long recognized that school boards are recipients of certain expressly delegated powers from the legislature. LSA-R.S. 17:81[1] contains no statutory grant to dismiss a teacher upon the discontinuance or abolishment of a position. While I recognize that a school board need not have specific legislative authority for every act which may be incidental or necessary to the performance of its powers, and has such implied or additional powers as are necessary and proper to the performance of its statutory duties, a school board has “ * * * [no] authority to make rules and regulations which may impair or nullify the provisions of * * * ” the Teachers’ Tenure Act. LSA-R.S. 17:445. I do not question the power of a school board to validly abolish any position as it sees fit, but in effecting the abolition of a position, it is impermissible for a school board to cause the discharge or demotion of any teacher in contravention of the teacher tenure law.
In Dugas v. Ascension Parish School Board, 228 La. 80, 81 So.2d 817 (1955), cited by plaintiffs and defendant, the court said thát by virtue of the teacher tenure law, teachers enjoy greater protection than an ordinary civil service employee who may lose his job through a good faith abolition of a position and “the doctrine that a permanent teacher may be deprived of tenure by a bona fide abolition of a position has never been recognized in Louisiana.” In citing with approval State ex rel. Parker v. Vernon Parish School Board, 222 La. 91, 62 So.2d 111 (1952), that court also said:
“This court has but recently held to be illegal the dismissal of a probationary teacher by abolition of his position (Supervisor of Classroom Instruction) without the compliance with R.S. 17:442 which provides that probationary teachers may not be dismissed except upon written recommendation of the Superintendent of Schools accompanied by valid reasons therefor.”
In Dugas and Parker, the courts held that in order for a teacher to be discharged or demoted, whether permanent or probationary, the teacher tenure law must be strictly *215 complied with. cf. Moses v. Washington Parish School Board, 304 F.Supp. 1112 (U.S.D.C., E.D.La.1969). An assistant principal is included within the definition of those protected by LSA-R.S. 17:441 which defines “teacher” as any employee of any parish or city school board who holds a teacher’s certificate and whose legal employment requires such a teacher’s certificate. Probationary teachers can only be discharged upon the written recommendation of the superintendent to the school board accompanied by valid reasons. LSA-R.S. 17:442. This provision is in contrast to LSA-R.S. 17:443 which requires that permanent teachers must be granted a hearing before the school board prior to dismissal.
The board’s actions constituted a demotion of the plaintiffs and in effect their discharges as assistant principals. In State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153 (1944), the court held: “ * * * A demotion from one position to another when accompanied by a substantial reduction in pay is tantamount to a discharge and no teacher or principal can be removed from office except upon charges of willful neglect of duty or incompetency or dishonesty. if; ‡ sft f>
In Parker the plaintiff was a probationary supervisor, and a tenured teacher, when he was informed that his services would no longer be required because his position had been abolished. The petitioner prayed that the school board be ordered to grant him employment in a position of equal standing and like pay. The court granted his demand after finding that the superintendent had not provided the required written recommendation accompanied by valid reasons that he be discharged. No question exists that a board can abolish a position in good faith, but it cannot use that abolition to indirectly violate the provisions of the teacher tenure law.
Parker must be read in conjunction with State ex rel. Nobles v. Bienville Parish School Board, 198 La. 688, 4 So.2d 649 (1941). That case involved the illegal discharge of a teacher, although not in connection with the abolition of a position. The Nobles court held that in order to effect a discharge of a probationary teacher, the law had placed a responsibility on the superintendent and the board that must be specifically discharged by each. Any failure of compliance which results in a discharge is illegal, and such a teacher is entitled to be reinstated to his former position. In Nobles as in this case, the probationary teacher was on the eve of acquiring tenure, and the court said:
“The present scholastic year will complete the plaintiffs probationary term and place him in line for employment as a permanent teacher provided the provisions of the Act are complied with. To award the plaintiff the amount of salary without reinstating him to the status from which he had been illegally dismissed would not give the relief that the plaintiff is entitled to.”
The acquisition of tenure is one of the most important emoluments of office to which a teacher is entitled. To merely order that the petitioners be placed in positions of like standing and salary would be to deny to them the tenure to which they are entitled had there been compliance with the provisions of the teacher tenure law.
I do not find that the school board did validly abolish the position. Even if it did abolish a position, it was in contravention of the teacher tenure law and the petitioners must be reinstated to the positions held as of June 13, 1973.
Further, I do not find that the resolution was a good faith abolition of a position, but merely the reduction of a certain number of positions within a category, accordingly, in my opinion, the petitioners must be reinstated to the positions from which they were illegally discharged. I would so hold because I find no evidence in the record to substantiate the contention that *216 there was ever any such position as “second assistant principal.” Prior to the resolution of June 13, 1973, such terminology had not been employed.
In 1970, the school board enlarged the number of assistant principals within the Jefferson Parish school system in anticipation of certain problems arising out of the then recent court ordered school desegregation. It was at that point in time that Palone, Heslin, and Heard were appointed. The school board contends that these additional. assistant principals appointed subsequent to 1970 were “second assistant principals” and that these “second assistant principals” are no longer needed; that the school board is merely trying to reduce the total number of assistant principals to the pre-1970 number. The school board argues the post-1970 appointments were the ones affected, and that to quibble whether such position as “second assistant principal” existed is merely a matter of semantics. I do not agree.
None of the petitioners in this suit was ever referred to as “second assistant principals.” On the date of their appointments they were appointed assistant principals with the duties of assistant principals. For administrative purposes each assistant principal was either designated “principal of academic services,” or “principal in charge of pupil services.” There is no consistency in what particular designation was not the basis for one assistant principal being a “second,” and another a “first.” No discrimination in rank existed among the eighteen assistant principals before the June 13th resolution.
With the attempted abolition of the position, no corresponding duties were abolished. The duties that these petitioners performed are still being performed by other assistant principals or other employees of the school board. In fact two of the petitioners, Dalferes and Heslin, now hold the position of discipline coordinator, and perform some of the duties they performed as principals in charge of pupil services.
In view of the foregoing, I find that the school board did not legally and validly abolish any position. I understand what the school board intended to do but, nevertheless, there was no such position as “second assistant principal” to be abolished. The position was that of assistant principal. Because this reduction was not a valid abolition of a position, it resulted in the illegal discharge and demotion of petitioners in contravention of the teacher tenure law which requires that they can only be discharged or demoted pursuant to the recommendation of the superintendent accompanied by valid reasons. Mr. Sisung the present superintendent and Mr. Bertucci, the former superintendent, both testified that they had never made a recommendation that any of the petitioners be demoted or discharged. Since the procedure as mandated by the teacher tenure law was not followed, the petitioners’ demotion was illegal and, therefore, they must be reinstated to the positions that they held as of June 13, 1973. Since this discharge was illegal and without effect, the petitioners, who would have acquired tenure had they not been discharged illegally, have not acquired tenure and are permanent assistant principals within the Jefferson Parish school system.
Since I decide that no valid abolition of a position was effected by the school board’s resolution, I do not decide whether or not this action was in good faith or bad faith. However, I point out though no single act of bad faith of the board appears on the record, a member of the board knew from a composite listing of personnel he had obtained which persons would be affected by the abolition. The record read as a whole can be construed to reflect that the board’s action was not in good faith. The fact that these petitioners were never informed that the abolition of their positions was under consideration by the school board seems inequitable under the circumstances.
I was not impressed by the action of the school board in firing two of the petition *217 ers from summer school positions after their permanent positions were abolished, because a question existed as to whether or not they would acquire tenure during their summer employment.
The allegation of the board that its action was solely motivated by economic concerns is untenable at best. Certainly an argument can be made that any saving, however small, is an economy measure. The size of the school board’s budget in excess of $45 million, compared to the saving, about $60,000 is not the crucial point. No other evidence was produced by the school board to reveal that any real economy efforts were taking place in the Jefferson Parish Public School System. In fact, evidence was introduced to show that the school board had actually authorized increased expenditures. For the 1973-74 term, there are more teachers and more pupils in Jefferson Parish than ever before. At the time of the resolution, the voters of Jefferson Parish had just authorized greater flexibility on the part of the school board in the use of revenue obtained by a sales tax.
These factors combined with the fact that this action was in direct contravention of the teacher tenure law, make me skeptical as to whether good faith actually existed on the part of the school board.
Appellants major contention is that its action should be upheld because it did not violate the teacher tenure law. It urges this court to distinguish between the action of the school board, and the effect of that action. It is their contention that the school board had the unquestioned right to abolish a position in good faith, with which this court agrees, and that their action was just such an abolition. They argue that the demotion of the petitioners is separate and apart from their action, and came only after the meeting of the petitioners and the superintendent on June 14, 1973, at which the superintendent informed petitioners that their positions had been abolished, and subsequently made written recommendations that the petitioners be returned to their previously held tenured positions. Supposedly the petitioners now hold their present positions as a result of the post abolition written recommendation of the superintendent supported by valid reasons. Even if this distinction were to be accepted by me, valid reasons do not mean any good reason, but just cause or a reason personal to the teacher discharged because of his unsatisfactory performance. Andrews v. Union Parish School Board, 191 La. 90, 184 So. 552 (1938). The fact that no teacher, permanent or probationary, can be discharged or demoted without just cause, is at the heart of the teacher tenure law, and is the very kind of protection that the law was designed to give to teachers. No evidence exists in the record that any of the petitioners performed their duties in an unsatisfactory manner.
For the foregoing reasons, I respectfully dissent.

. “Each parish school board shall determine the number of schools to be opened, the location of the school houses, the number of teachers to be employed, and select such teachers from nominations made by the parish superintendent, provided that a majority of the full membership of the board may elect teachers without the endorsement of the superintendent. The boards shall have authority to employ teachers by the month or by the year, and to fix their salaries; provided that there shall be no discrimination as to sex in the fixing thereof and provided further, that it is not the purpose of this Section to require or direct the reduction of any salary, or salary schedule, presently in force. The boards shall see that the provisions of the state school laws are complied with. “ * * * »