### ELLERS v. RAILROAD RETIREMENT BOARD.

### No. 72.

Circuit Court of Appeals, Second Circuit.

Jan. 6, 1943.

For former opinion, see Ellers v. Latimer, D.C., 44 F.Supp. 822.

Joseph H. Freehill, General Counsel, and Jacob Abramson, Atty., Railroad Retirement Board, both of Chicago, Ill., for appellant.

Homer E. Peters, of Albany, N. Y., for appellee.

Before L. HAND, SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

█ The first question is as to the jurisdiction of the district court. Section 11 of the Railroad Retirement Act of 1937, 45 U.S.C.A. § 228k, provides: "An employee or other person aggrieved may apply to the district court of any district wherein the Board may have established an office or to the District Court of the United States for the District of Columbia to compel the Board (1) to set aside an action or decision of the Board claimed to be in violation of a legal right of the applicant or (2) to take action or to make a decision necessary for the enforcement of a legal right of the applicant. Such court shall have jurisdiction to entertain such application and to grant appropriate relief. * * *"

With respect to the establishment of offices section 10(b)4 of the Act, 45 U.S.C.A. § 228j(b)4, directs that the Board "4. * * * shall maintain such offices, provide such equipment, furnishings, supplies, services, and facilities, and employ such individuals and provide for their compensation and expenses as may be necessary for the proper discharge of its functions. * * *"

The Board maintains in the Post Office Building in Albany, New York, a room which is open daily to the public during normal business hours, but it contends that it has not established an "office" within the meaning of section 11 of the statute. The room is equipped with desks, files, typewriter and telephone. The telephone is listed in the directory under the name of "Railroad Retirement Board." The door of the room carried the name of the Board when the present suit was started but the legend was subsequently changed to "District Manager's Office, Railroad Retirement Board." A stenographer employed by the Board is regularly in attendance. Three other employees as field agents, one of whom is designated "district manager," make transitory use of the room as their headquarters. This is one of thirty-five similar field headquarters distributed throughout the United States. The field agents perform investigatory and informational services under the Railroad Unemployment Insurance Act, 45 U.S.C.A. § 351 et seq., and the Railroad Retire-

ment Acts. They assist applicants in the preparation of claims for submission to the Board and may accept duly executed applications for transmission to the main office in Washington. All adjudication of claims, making of awards, and certification of payments under the Railroad Retirement Acts are performed only at the main office.

█ The Board attempts to buttress its argument that it has not established an "office" in Albany by reliance on its own Regulations.[1] As originally promulgated the regulation (3 Fed.Reg. 1478, June 23, 1938) read: "Section 62:15. Office of the Board—The only office established by the Board is in the District of Columbia (Headquarters of field forces are not offices within the meaning of this section)."

By amendment in 1940 the regulation "established," in addition to the Washington office, ten "regional offices" located in large cities in various sections of the country. One of them is in the city of New York. The amendment declared that "Offices of District Managers or any other field forces are not offices within the meaning of this section." 5 Fed.Reg. 3392, August 29, 1940. We think Judge Cooper was correct in ruling that the Board could not by its regulations restrict the meaning of the statutory phrase "any district wherein the Board may have established an office." Compare Bruno v. Railroad Retirement Board, D.C.W.D.Pa., 47 F.Supp. 3, 5. By section 10(b)4 the Board is directed to "maintain such offices * * * as may be necessary for the proper discharge of its functions." While it has discretion to determine where it will maintain offices, if it does in fact maintain one in a given district, such office must be regarded as "established" therein. We see nothing in the statute to confer on the Board power to select between offices which it actually maintains as necessary for the proper discharge of its duties, and to declare that some are "established" and others not. Nor is any reason apparent why the Board should be given such power. The obvious purpose of conferring jurisdiction upon the district court of any district wherein the Board may have established an office was to enable a railroad employee aggrieved by a

---

[1] Section 10(b)4, 45 U.S.C.A. § 228j (b)4, provides that "The Board shall establish and promulgate rules and regulations to provide for the adjustment of all controversial matters arising in the administration of" the Railroad Retirement Acts of 1935 and 1937.

decision of the Board, to obtain judicial review of the decision in a forum more convenient for his suit than the District of Columbia. The statute contains no limitation on the meaning of the word "office" other than that it shall be necessary for discharge of the Board's functions. Such functions are performed at the Albany office. It is true they do not include what counsel calls the "primary" functions of the Board, adjudicating claims, making awards and certifying payments, but we see no justification for reading such a limitation into the statute. To do so would require all suits to be brought in the District of Columbia, which was plainly not contemplated by Congress and for which the Board itself does not contend, since it concedes that suits can be brought in the districts where its "regional offices" are located. We are satisfied that the district court had jurisdiction of the action.

On the merits of Ellers' claim for an annuity, the issue before the Board was whether he was in "employment relation" with the Boston & Maine Railroad on August 29, 1935.[2] He had not worked for the railroad after its Rotterdam Junction terminal was abandoned in November 1931. He claimed, however, that he was not then discharged but was put on furlough, and he presented in support of his claim affidavits by William H. Nolan, who was his foreman at the time the terminal was abandoned. Opposed to these affidavits were signed reports by the assistant general manager of the railroad and by the Board's investigators to the effect that Ellers had not been put on furlough, and that his name had been dropped from the seniority roster. There were also letters showing that he had been refused employment by the railroad. Upon all the evidence the Board concluded that he had no "employment relation" with the carrier on or after August 29, 1935.

■ In an action to review a decision of the Board, the merits of the plaintiff's claim are not to be tried de novo. The only issue open as to the facts is whether the Board's findings are supported by substantial evidence. Utah Copper Co. v. Railroad Retirement Board, 10 Cir., 129 F.2d 358, 361; Holloway v. Railroad Re-

tirement Board, D.C.N.D.Ga., 44 F.Supp. 59, 62; South v. Railroad Retirement Board, D.C.N.D.Ga., 43 F.Supp. 911, 913. The district judge recognized this principle but, in applying it, apparently came to the conclusion that the evidence relied on by the Board in support of its decision was unsubstantial because it consisted of reports, answers to questionnaires and letters none of which was under oath, whereas Ellers' principal evidence consisted of Nolan's and his own affidavits. In drawing a distinction between sworn and unsworn evidence and ascribing controlling weight to the former we think the court was in error.

■ Administrative agencies are usually not restricted to the same rules of evidence as apply in court proceedings, even in the absence of an express statutory provision on the subject. See Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 443, 50 S.Ct. 220, 74 L.Ed. 524; John Bene & Sons v. Fed. Trade Commission, 2 Cir., 299 F. 468, 471; Evidence in the Administrative Process, 55 Harv.L. Rev. 365, 379. While the Board is given power to compel the attendance of witnesses, administer oaths and take testimony, 45 U.S.C.A. § 228j(b)4, its administration of the Acts is not confined to information obtained by testimony. The same section authorizes it to "make all necessary investigations in any matter involving annuities or other payments"; and to "require all employers and employees * * * to furnish such information and records as shall be necessary for the administration" of the Acts. If an employer wilfully refuses to make a report or knowingly reports false information he is subjected to severe criminal penalties by § 13 of the Act, 45 U.S.C.A. § 228m. It is clear, therefore, that in adjudicating claims for annuities the Board is permitted to consider evidence which would be objectionable in a court of law, and if it is of a kind on which fair-minded men are accustomed to rely in serious matters, it can support an administrative finding. See National Labor Relations Board v. Remington Rand, 2 Cir., 94 F.2d 862, 873. The evidence received was of this character. The weight to be accorded it was for the Board to determine. Even when a court

---

[2] The term "employment relation," as defined in the 1935 Act, may be found in 45 U.S.C.A. § 215(d), note. Substantially the same definition appears in the 1937 Act. 45 U.S.C.A. § 228a(d). See also Section 204.02 of the Regulations, 4 Fed.Reg. 1477, April 7, 1939.

upon a consideration of all the evidence might reach a different conclusion, it may not substitute its own for the administrative judgment. See Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 81 L.Ed. 659; Holloway v. Railroad Retirement Board, D.C.N.D.Ga., 44 F. Supp. 59, 62. Rejecting, as we do, the theory that statements in affidavits must necessarily prevail over unsworn reports by officers of the railroad or agents of the Board we are satisfied that the Board's decision finds substantial support in the evidence and was not arbitrary or capricious. Accordingly the judgment must be reversed with directions to grant the defendant's motion for summary judgment. It is so ordered.