### GARDNER v. RAILROAD RETIREMENT BOARD.

#### Civ. A. No. 918.

District Court, W. D. Louisiana, Shreveport Division.

Sept. 9, 1944.

Walter E. Jones, of Longview, Tex., for plaintiff.

Samuel J. Rhinestine, Joseph H. Freehill, Paul M. Johnson, and Sidney B. Jacoby, all of Chicago, Ill., for defendant, Railroad Retirement Board.

PORTERIE, District Judge.

We have checked the narrative as prepared for us in brief by the attorneys of the Railroad Retirement Board, and have found it correct and so well put in content and sequence that we have made practically an adoption of it.

This is an action against the defendant Railroad Retirement Board, an independent agency in the executive branch of the Government of the United States, charged with administering the Railroad Retirement Acts of 1935 and 1937, 49 Stat. 967, 45 U.S.C.A. §§ 215–228, notes, as amended by 50 Stat. 307, 45 U.S.C.A. §§ 228a–228s. The action was brought pursuant to Section 11 of the Railroad Retirement Act of 1937, which section authorizes the review, by certain district courts of the United States, of decisions of the defendant Board.

Plaintiff made an application, officially filed on July 15, 1940, to the defendant Railroad Retirement Board for an annuity under the Railroad Retirement Acts, claiming that he was born on October 11, 1887; that he is totally and permanently disabled for regular employment for hire; that his only service to an employer covered under the Railroad Retirement Act was service to the Gulf, Colorado and Santa Fe Railway Company from September, 1903, to June, 1930, at which time he was discharged by that Company (unjustly, he claims); and that on August 29, 1935, he was neither in the active compensated service of an "employer" within the meaning of the Railroad Retirement Act, nor on furlough, ready and willing to serve, on leave of absence, or absent on account of sickness or disability.

The Board's initial adjudicating unit, the Division of Retirement Claims, denied plaintiff's application. Upon appeal, the denial was affirmed by the Appeals Council of the Board. Upon final appeal to the Board itself, the Board, in a unanimous decision entered on the Board's records March 18, 1943, and mailed to the plaintiff on March 20, 1943, affirmed the decision of the Appeals Council and held that beginning July 6, 1930, and extending through August 29, 1935, plaintiff's status with respect to the Gulf, Colorado and Santa Fe Railway Company was that of an individual who had been dismissed from its service, and that at no time since August 28, 1935, has plaintiff had the status of a person furloughed from the service of the Gulf, Colorado and Santa Fe Railway Company, subject to call for service and ready and willing to serve, or on leave of absence, or absent on account of sickness or disability, in accordance with any established rule or practice then in effect on the Railway Company.

A complaint bearing the caption "Tony Leonard Gardner v. The Railroad Adjustment Board" was filed with the Clerk of the United States District Court for the Western District of Louisiana on December 4, 1943; a summons, issued on December 14, 1943, and directed to "The Railroad Adjustment Board," was received on December 15, 1943, by the General Counsel of the defendant Railroad Retirement Board. Defendant Railroad Retirement Board served an answer upon the plaintiff on February 5, 1944, raising insufficiency of process as one of its defenses in that the summons and complaint had been directed to "The Railroad Adjustment Board," while in truth and in fact the defendant's name is "The Railroad Retirement Board." On March 2, 1944, plaintiff filed with this Court a motion to amend his complaint, together with an amended complaint, and on March 8, 1944, this court granted plaintiff's motion. Defendant served an answer to the amended complaint upon the plaintiff on March 20, 1944.

In his amended complaint, in which "The Railroad Retirement Board" is named as party defendant, plaintiff alleges that he was first employed by the Gulf, Colorado and Santa Fe Railway Company in 1903 and worked for the Company for a period of twenty-seven years; that the Board was in error in holding that the plaintiff was dismissed from the service of the Railway Company on July 6, 1930, or on July 5, 1930, or at any time thereafter; that plaintiff was notified of his dismissal on July 2, 1930, effective at once, and after such dismissal was placed on another "run" and kept in the "service" three more days, which act, plaintiff claims, created a new employment relation which was never cancelled by the Railway Company and from which the plaintiff never resigned; that after the dismissal he not only worked for the Railway Company three days but stood ready and willing at all times to work and so expressed himself to the officials of the Railway Company, but the Company refuses to recognize that he has the status of an employee; that the dismissal was too severe a punishment for the offense charged; and that by the acts of the Railway Company he has acquired the status of a retired employee.

Defendant has defended on the grounds that plaintiff's process herein was insufficient and that the amended complaint fails to state a claim upon which relief can be granted. Defendant answered that the record shows that plaintiff was dis-

charged by the Railway Company, notice of which was given by a written communication dated July 2, 1930, at Beaumont, Texas, addressed to the plaintiff at Longview, Texas, and that in pursuance and in consequence thereof, plaintiff finally ceased all service to said Railway Company three days later on July 5, 1930, and never thereafter was on furlough, on leave of absence, or absent on account of sickness or disability from the service of said Railway Company. Defendant denied that the record shows that plaintiff was rehired by said Railway Company after having been discharged from its service in July, 1930, and averred that if the record shows plaintiff's status was that of one retired by said Railway Company it shows that such status was acquired in July, 1930. Defendant answers that plaintiff's allegations as to the unfairness of his discharge, even if construed as allegations of fact, are irrelevant and immaterial to the issue in this case.

The questions presented in this case are:

1. Was the process herein sufficient?

2. If the process was sufficient, does the amended complaint state a claim upon which relief can be granted under Section 11 of the Railroad Retirement Act of 1937?

3. If the previous questions are answered in the affirmative, is the decision of the defendant Railroad Retirement Board that plaintiff was not on or after August 29, 1935 in an "employment relation" within the meaning of the Railroad Retirement Act of 1935 or the Railroad Retirement Act of 1937, and therefore not entitled to an annuity, arbitrary, capricious, not based on substantial evidence in the record before the Board, or based on a plain error of law?

Even though technically and quite legally the first two of the above three questions should be answered in the negative, that is, the contention of the Railroad Retirement Board should be sustained, we shall answer the questions in the affirmative in order that the case of the plaintiff may be heard and considered on the real point that is urged by him. After all, the proper intended defendant is in court and has had every opportunity to be heard.

In the consideration of the third question above, the following are the parts of statutes and the regulations that are to be used: Railroad Retirement Act of 1937, Section 1(d), Sec. 10(a), Sec. 11, 45 U.S.C.A. §§ 228a (d), 228j (a), and 228k. Railroad Retirement Act of 1935, Section 1(d), 45 U.S.C.A. § 215(d) note. Regulations of the Railroad Retirement Board, 20 Code Fed.Reg., Sec. 204.2(a) and (b); Sec. 204.2 (f); Sec. 204.5(a) and (b).

The amended complaint fails to state a claim upon which relief can be granted under Section 11 of the Railroad Retirement Act of 1937 in that it fails to allege facts showing that the decision of the defendant Board is arbitrary, capricious, unsupported by substantial evidence in the record before the Board, or is based on a plain error of law.

In South v. Railroad Retirement Board, 5 Cir., 131 F.2d 748, 750, certiorari denied, 317 U.S. 701, 63 S.Ct. 525, 87 L.Ed. 561, the Circuit Court of Appeals for this circuit said: "We think it too clear for argument that the statute in terms provides not for a trial de novo but for a review of the Board's proceedings and for an affirmance of the order and decision unless it is made to appear that the order is without legal support, that is, that it is either without evidence to support it, or is based on an incorrect theory of law. It is elementary law, as well in cases where statutory review is not provided for as in cases where it is, that the findings and decisions of administrative agencies, when within the scope of the authority conferred upon them, may not be set aside or otherwise interfered with by the courts where they are supported by substantial evidence. But it is especially true in the case of a statutory review on the record such as is provided for here; that the jurisdiction and function of the court is supervisory and not original; that it is to review the findings and order for error and not to retry the matter; and that the order under review must stand, if supported by substantial evidence, and not in violation of law. In a careful opinion in this case, the same in substance on this point as the one he wrote and caused to be published in Holloway v. Railway Retirement Board, D.C., 44 F.Supp. 59, the district judge has announced conclusions and collected authorities fully supporting this view. Without restatement here, we refer to and adopt as correct the statement of them there made."

Decisions in other jurisdictions are to exactly the same effect: Ellers v. Railroad Retirement Board, 2 Cir., 132 F.2d 636; Bruno v. Railroad Retirement Board, D.C., 47 F.Supp. 3; Carey v. Latimer et al., D.C.W.D.N.Y.;[1] Bray v. Railroad Retirement Board, D.C.D.C.;[1] Morris v. Rail-

---

[1] No opinion for publication.

road Retirement Board, D.C.D.C.;[1] Van Natta v. Railroad Retirement Board, D.C. D.C.[1]

■ The amended complaint in the instant case does not contain any allegations that the decision is arbitrary or capricious or not based upon substantial evidence or based upon a plain error of law. Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256.

All allegations contained in paragraphs 1, 2, 3, 4, 8, 9, 10, 11, 12, and 13 of the amended complaint are either mere conclusions of law or are immaterial and irrelevant. Thus, the allegations in paragraph 1 as to plaintiff's residence and the location of the Board's headquarters are immaterial and irrelevant with respect to any issue involved; the allegations in paragraph 11 that plaintiff was first employed by the Railway Company in 1903 and continued to serve them for a period of twenty-seven years, are immaterial and irrelevant for the reason that the Board found on substantial evidence that plaintiff did not have the required "employee" status on or after August 29, 1935, necessary to eligibility for an annuity under the Railroad Retirement Acts; and all other allegations of fact in the paragraphs listed above are immaterial and irrelevant in that they are allegations made independently of the record before the Board and as if this were a proceeding de novo, while the scope of the Court's review is limited as set out above. The allegations in paragraphs 5 and 7 of the amended complaint which are merely that a transcript of the record before the Board was filed with the Court and that the Board rendered a decision denying plaintiff's claim for an annuity, of course do not state a claim upon which relief can be granted under Section 11 of the Railroad Retirement Act. And while the allegations in paragraph 6 of the amended complaint—that the record shows that plaintiff's case grows out of his employment by the Gulf, Colorado and Santa Fe Railway System from the year 1903 until the present time except for one day in July, 1930, and that by acts of said railway system, his status is that of a retired employee—may have been directed to the record before the Board, they likewise do not state any claim upon which relief can be granted under Section 11 in that they do not constitute any showing that the record contains no substantial evidence to support the Board's findings or decision, or that the record shows that the Board was arbitrary or capricious.

Therefore, the complaint fails to state a claim upon which relief can be granted.

Also, the defendant Board's decision is based on substantial evidence contained in the Board's record, is not arbitrary or capricious, and is not based on a plain error of law.

■ Since the Board found that plaintiff did not have an "employment relation" on or after August 29, 1935, within the meaning of either Railroad Retirement Act, it made no decision on any of the other elements of plaintiff's application for an annuity, such as age, length of creditable service and disability. The lack of such an "employment relation" alone is sufficient to render plaintiff ineligible for an annuity in view of the fact that plaintiff has never made any claim and there is no evidence whatever that he was otherwise an "employee" on or after August 29, 1935. Section 2(a) and Section 1(b), Railroad Retirement Act of 1937, 45 U.S.C.A. §§ 228b (a), 228a (b) ; Section 3 and Section 1(b), Railroad Retirement Act of 1935, 45 U.S. C.A. §§ 217(a), 215(b) notes. Thus, the only issue before the court for review is whether on the record before the Board, the Board's ruling that plaintiff had no "employment relation" on or after August 29, 1935, is arbitrary or capricious, or unsupported by the evidence, or based on a plain error of law.

That the Board's decision is not arbitrary or capricious is at once apparent. Plaintiff was given every opportunity to submit any and all evidence and argument that he desired. The various units of the Board vigorously and exhaustively explored all available sources of information and questioned and assisted plaintiff and the carrier by whom he had been employed, in their efforts to elicit all the facts concerning plaintiff's claim that he had the necessary "employment relation." Moreover, the question whether plaintiff had an "employment relation" was considered and decided, with opinions in each instance, by the Division of Retirement Claims, the Appeals Council, and the Board itself.

■ The evidence in the record to support defendant Board's decision is not only substantial but convincing, and the de-

[1] No opinion for publication.

cision, far from being based on a plain error of law, is actually compelled as a matter of law.

In order to avoid the obvious conclusion that he did not have the necessary "employment relation" on or after August 29, 1935, plaintiff now argues that he was "notified of his dismissal on July 2, 1930, effective at once, and after such dismissal he was placed on another 'run' and kept in the 'service' three (3) more days, which act created a new employment relation which has never been cancelled by the 'Company' and from which petitioner has never resigned and which is still in force." The plaintiff, however, never alleged such "new employment" in his voluminous correspondence with the Railway Company and the railway labor organizations, in his submission to the National Railroad Adjustment Board, or in his complaint against the Railway Company filed in the District Court of Galveston County, Texas. Also, the letter of dismissal by the Railway Company's Superintendent was dated July 2, 1930, at Beaumont, Texas, and addressed to the plaintiff at Longview, Texas, over two hundred miles away, thus making it practically impossible that plaintiff, as he now claims, received that letter on the same day (July 2, 1930). Furthermore, his argument is in conflict with his other statements.

In a letter of November 12, 1940, to the Chairman of the Appeals Council of the Board, in which he attempted to make out a case for his theory of a "new employment", plaintiff alleged that the Company discharged him "on July 2" and "again required me to report for duty and protect their trains until the 6th," but then stated expressly: "Part of the time I had the Superintendent's letter in my possession * * * dated the 2nd", which shows that even according to his own version of the occurrences he received the letter in question sometime after July 2, 1930.

But even if it were true that plaintiff had the letter at the time he was going out, or was about to go out, on another "run", this would not in any way affect the finding that he did not have an "employment relation" on or after August 29, 1935. For the evidence in the record, including plaintiff's own statements, shows conclusively that plaintiff was dismissed by the Railway Company pursuant to and in consequence of the investigation of June 27, 1930, which found him guilty of violation of certain rules. Even assuming that plaintiff was sent out on another "run" after his receipt of the Superintendent's letter, there is no evidence whatever in the record to show that plaintiff was hired at any time after July 1, 1930, in any new and other employment from that in which he had been prior to July 2, 1930, or that he was re-hired after his discharge in July, 1930. And, clearly, the evidence in the record, consisting, in addition to other testimony, of numerous statements by plaintiff himself, is uncontroverted and substantial that plaintiff has never been reinstated in the service of the Railway Company or has obtained any determination, judicial or otherwise, that after July, 1930, he was in any status other than that of a discharged former employee of the Railway Company.

■ Moreover, even if it were true that plaintiff was given a "new employment" in July, 1930, after receiving the letter dated July 2, 1930, the evidence in the record is uncontroverted and substantial that he was discharged from such "new employment" long before August 29, 1935. This is shown not only by the numerous statements of the Railway Company to the effect that after July, 1930, i. e., ever since a time prior to August 29, 1935, plaintiff was in a discharged status, but is confirmed by plaintiff's own statements recognizing his status as that of a former employee, of the Railway Company, discharged ever since July, 1930. (In answer to a question as to his last employer he stated that in "1930 I was discharged".) See also, e. g., Galveston, H. & S. A. R. Co. v. Eubanks, Tex.Civ.App., 42 S.W.2d 475, 479; Dunbar v. Orleans Metal Bed Co., 145 La. 779, 82 So. 889, 891; 35 Am.Jur., Master and Servant, §§ 26, 34. The fact that on may occasions after 1930 plaintiff made unsuccessful attempts to be "reinstated" demonstrates conclusively that he was discharged from such "new employment." Bodmer v. Police Mut. Aid Ass'n, 94 Utah 450, 78 P.2d 640; Ryan v. Mayor, etc., of City of New York, 154 N.Y. 328, 48 N.E. 512.

■ For the same reason, there is no merit whatever in plaintiff's allegation that he acquired the status of a retired employee. Even if the record shows that plaintiff's status was that of a person retired by the Railway Company, it is clear that such status was acquired in July, 1930. Thus, any such status, far from indicating that plaintiff had an "employment relation" on

or after August 29, 1935, rather would demonstrate conclusively that plaintiff was not in an "employment relation" at any time after July, 1930. See Holloway v. Railroad Retirement Board, D.C., 44 F.Supp. 59, 61, 62, in which case the court upheld a decision of the Board that since the applicant had been retired he was not in an "employment relation."

Generally, we are impressed with the following two paragraphs from the decision rendered March 18, 1943, by the Railroad Retirement Board:

"The appellant has come closest to setting forth a basis for a claim of employment relation to all responsive to the provisions of the Acts and of our Regulations in his statements that disabilities incurred while in service have prevented his return. But it is clear that his dismissal, and not his disability, was the reason for his absence from service on August 29, 1935. He does not deny he was dismissed before August 29, 1935, but questions the exact date. Dismissal, as is shown by our Regulations, precludes the existence of an employment relation thereafter. Thus, we cannot find that the appellant had an employment relation as late as August 29, 1935. Only in the event of actual removal of a discharge, by reinstatement in accordance with Section 204.03(f) of the Regulations, can an individual who was discharged be found to have been on 'furlough' or 'leave of absence' or 'absent on account of sickness or disability' during the period of the discharge.

"Undoubtedly, appellant worked until July 5, 1930; but his continuance in service beyond July 2 did not create the employment relation he needs to qualify for an annuity. It is immaterial whether the act of dismissal occurred on July 2 or as late as July 6; both dates are prior to August 29, 1935. The time when the dismissal was intended to become effective is equally immaterial if it actually did take effect prior to August 29, 1935. The notice of the appellant's dismissal may not have reached him until the 5th or 6th; but ever since July 6, 1930, he and the Railway Company have proceeded on the understanding that after July 6, 1930, his status was that of an individual dismissed from service. Thus, he made requests for removal of the dismissal and for reinstatement in service in the following September and in January of 1931 which the Railway Company officials denied on January 31, 1931. Both parties

thereupon let the matter rest for the next five years, until 1936. The record does not show that any of the appellant's later efforts at reinstatement met with success."

We are not favorably impressed with plaintiff's insistence that he has at all times since July, 1930, been ready and willing to return to work and that he has used every effort and means to get back to work. We find that he was dismissed for substantial cause and that the actions of the Company were found to be legal and sufficient by three of the reviewing agencies. Also, the claim of plaintiff that he was "notified of his dismissal on July 2, 1930, effective at once, and after such dismissal he was placed on another 'run' and kept in the 'service' three (3) more days, which act created a new employment relation which has never been cancelled by the 'Company' and from which petitioner has never resigned and which is still in force", with the view of proving new employment, is not satisfactory to us. We conclude from the facts and circumstances that it was all a single transaction of dismissal. When plaintiff sought to be reinstated, the defendant Company refused to put him back to work. This refusal, which was after his last run, is at least as much a discharge as the original notice. The original notice of discharge and the actual completed physical discharge of July 6th prevent an "employment relation" on August 29, 1935.

In paragraph 13, the plaintiff has a new phase of complaint, to-wit: that his dismissal was too severe a punishment for the offense charged, and that he was dismissed for causes other than those set out in the charges against him, and that he did not have a fair trial when he was dismissed. Our investigation of the record shows that whenever any fact or inference from facts that might go to support such an allegation was offered, the reviewing boards gave the issue full and just consideration. There were no facts placed in the record whatever to support the truth of these allegations except the bare and unsupported claim of plaintiff—purely an inference and a conclusion.

■ We believe, however, that even if these allegations were true and if plaintiff's discharge were wrongful, this would be wholly immaterial as to whether or not plaintiff had an employment relation on or after August 29, 1935. South case, supra; Bruno v. Railroad Retirement Board, su-

pra; Ellers v. Railroad Retirement Board, supra; Frawley v. Latimer et al., and Railroad Retirement Board, D.C.N.J., 57 F.Supp. 276; Utah Copper Co. v. Railroad Retirement Board, 10 Cir., 129 F.2d 358.

Plaintiff's complaint must be denied and judgment will be signed accordingly upon presentation.