952

Sadie J. McDANIEL

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare.

Civ. No. 11672.

United States District Court
D. Maryland.

June 6, 1963.

See also 190 F.Supp. 270.

Jacob Matz, Baltimore, Md., for plaintiff.

Joseph D. Tydings, U. S. Atty., and Robert J. Carson, Asst. U. S. Atty., Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

This is an action under sec. 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, consisting of a decision of the Appeals Council, dated October 5, 1962, holding "that the claimant's impairments were not of such severity as to prevent her from engaging in all types of substantial gainful activity commencing on or before June 30, 1957, when she last had the required insured status, and continuing without interruption until the date of filing her application herein", which was July 1, 1958.

Plaintiff contends that she was disabled during the critical period by a heart condition, which has been diagnosed by various doctors as angina and coronary insufficiency.[1] She had been hospitalized by reason of her symptoms in 1955, but the Referee found that during the critical period plaintiff was not unable to engage in any substantial gainful activity because of any physical or mental impairment within the meaning of sec. 216(i) of the Act, 42 U.S.C.A. § 416(i), and therefore was not entitled to disability benefits. Plaintiff's request to review the Referee's decision was denied by the Appeals Council. She filed a timely complaint in this Court, and the case was argued here in January 1961. It appeared that after the denial of review by the Appeals Council, plaintiff had consulted an attorney and had been examined again at Sinai Hospital. The results of these examinations were presented to this Court, which on January 25, 1961, remanded the case to the Secretary for the taking of additional evidence, stating:

"This additional evidence, not in the record before the Referee, should not be considered by this court in determining whether the conclusions of the Referee are supported by the findings and whether the findings are supported by substantial evidence on the record considered as a whole. But it should be and is treated by this court as good cause shown for remanding the case to the Secretary so that he may secure another report from Dr. Scherlis in which the

---

1. Plaintiff also claims that a hip fracture which occurred early in 1954 is also a contributing factor to her disability. However, the hospital records at the time of that injury and the subsequent reports are clearly sufficient to support the conclusion that no disability or impairment contributing to a disability can be attributed to the hip fracture.

doctor may consider his conclusion in the light of the additional information obtained in the recent Sinai admission, as well as his earlier information, and so that the Secretary may take such testimony or other additional evidence as he may deem proper. In view of the fact that the plaintiff is evidently not qualified educationally for office work and both doctors found that 'Ordinary physical activity results in fatigue, palpitation, dyspnea or anginal pain', by placing her in Class II, the Referee should specify what types of work he feels the plaintiff was mentally and physically capable of performing during the critical period."

The Appeals Council vacated its previous denial of the request for review, caused additional examinations to be made and reports to be filed, received the additional evidence offered by plaintiff's counsel, and on April 27, 1962, filed a 27-page decision, reviewing the evidence and affirming the decision of the Hearing Examiner (Referee). Plaintiff's attorney objected to the consideration by the Appeals Council of certain medical texts and employment studies referred to in the decision, and was given an opportunity to submit additional authorities and evidence in reply thereto. The Appeals Council reconsidered the case, and on October 5, 1962, filed an 11-page supplemental decision, modifying and affirming its decision of April 27, 1962.

The question before this Court is whether there is substantial evidence in the record considered as a whole to support that decision of the Appeals Council.

As is so often the fact in these cases, plaintiff's condition has deteriorated, and there is little doubt that she is now and has been since 1961 disabled from engaging in any type of substantial gainful activity. But that is not the question; the relevant period is from June 30, 1957, to June 30, 1958.

The evidence is set out at length in the decisions of the Appeals Council dated April 27, 1962, and October 5, 1962, respectively; it is unnecessary to review it here. Although there is evidence in the record from which the Appeals Council might have found the requisite disability, and although this Court does not agree with every inference drawn by the Appeals Council from the evidence, this Court finds and holds, applying the principles set out in Underwood v. Ribicoff, 4 Cir., 298 F.2d 850, that there is substantial evidence in the record considered as a whole to support the ultimate conclusion and decision of the Appeals Council.

That evidence includes the hospital records prior to June 1957, which were in general agreement that plaintiff had coronary artery or heart disease, with coronary insufficiency, well compensated, NSR (normal sinus rhythm). In November 1955 her own physician, Dr. Wallenstein had made a "final diagnosis" placing plaintiff in Class I of the Functional Classification of the American Heart Association. That Class is comprised of "Patients with cardiac disease but without resulting limitation of physical activity. Ordinary physical activity does not cause undue fatigue, palpitation, dyspnea or anginal pain." A hospitalization for a back injury sustained in July 1957 indicated that no more serious heart condition existed at that time, and the condition was reported as Class II–B by Dr. Wallenstein in July 1958, and as Class II by Dr. Scherlis in September 1958. Class II—Functional Capacity, is comprised of: "Patients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea or anginal pain." Class B. Therapeutic Classification, is comprised of: "Patients with cardiac disease whose ordinary physical activity need not be restricted, but who should be advised against severe or competitive physical efforts." The report of Dr. Scherlis, reaffirmed by him on August

25, 1961, states that at the time of his examination in September 1958 plaintiff had made 22 trips over the Master Two Step (the Master Exercise Test) with no complaint, and gave a history of climbing steps three to four times daily and walking several blocks without discomfort. Plaintiff herself testified before the Referee on March 11, 1959, that she prepares meals for herself and her husband, washes dishes, dusts occasionally, washes clothes with the help of her husband, and irons. It is reasonable to conclude from the evidence that she took her medicine (nitroglycerin) very seldom during the years 1956–57–58.

In response to the order for remand by this Court, the Appeals Council found that during the critical period plaintiff was able and qualified to engage in such occupations as a spinner in a knitting mill or a sheet metal worker, with a light or bench job, types of work which she has done in the past, or as a cashier in a store or restaurant.

In reaching this conclusion the Appeals Council considered medical texts by such authorities as Dr. Paul Dudley White and governmental studies of employment opportunities. Some of the texts are listed in note 2 below. Plaintiff's counsel objected to the consideration of these texts and studies by the Appeals Council, and he was given an opportunity to reply to them, in accordance with the provisions of sec. 7(d) of the Administrative Procedure Act, 5 U.S. C.A. § 1006(d), which provides: "Where any agency decision rests on official notice of a material fact not appearing in the evidence in the record, any party shall on timely request be afforded an opportunity to show the contrary".[3]

Consideration by the Appeals Council of these authorities, particularly those dealing with the type of work which plaintiff can do, is supported by sec. 205 (a) and (b) of the Social Security Act, 42 U.S.C.A. § 405(a) and (b), and by many court decisions.

In Kerner v. Flemming, 2 Cir., 283 F.2d 916, Judge Friendly stated at p. 922 that "the Secretary's expertise should enable him readily to furnish information as to the employment opportunities (including those in sheltered workshops), or the lack of them, for persons of plaintiff's skills and limitations." And in Graham v. Ribicoff, 9 Cir., 295 F.2d 391, 395, the Court accepted as proper the fact that the Appeals Council took "administrative notice of industrial and governmental studies bearing upon the employment opportuni-

2. White, "Heart Disease", 4 ed., p. 566; White, Clues in the Diagnosis and Treatment of Heart Disease, 2 ed., p. 37; Goldwater, Clinical Judgment and Common Sense for the Cardiac Patient, A.M.A. Journal, 169:598 (1959); Goldberger, Heart Disease—Its Diagnosis and Treatment, 2 ed., p. 767 (1955); Durbin and Goldwater, Rehabilitation of the Cardiac Patient, pub. in Circulation, 13:-417 (1956); De Graff, Total Disability from Diseases of the Heart, Soc. of Med. Juris., 1942–1950, New York (1954); Ungerleider and Gubner, Magnitude of the Problem of the Cardiac-in-Industry, pub. in Work and the Heart (1959); Ford and Hellerstein, Energy Cost of the Master Two-Step Test, A.M.A. Journal, 165:1866–75; Criteria Committee of the New York Association, Inc., Pardee, Chairman, Nomenclature and Criteria for Diagnosis of Diseases of the Heart and Blood Vessels, p. 100, 5 ed., 2d pr. (1955); Dictionary of Occupational Titles, U.S.

Dept. of Labor, Bureau of Employment Security.

3. The Attorney General's Manual on the Administrative Procedure Act, Department of Justice (1947) pp. 79–80, states: " * * * the process of official notice should not be limited to the traditional matters of judicial notice but extends properly to all matters as to which the agency by reason of its functions is presumed to be expert, such as technical or scientific facts within its specialized knowledge. Cf. H.R.Rep. p. 38 (Sen. Doc. p. 272). Agencies may take official notice of facts at any stage in a proceeding—even in the final decision—but the matters thus noticed should be specified and 'any party shall on timely request be afforded an opportunity to show the contrary'. The matters thus noticed become a part of the record and, unless successfully controverted, furnish the same basis for findings of fact as does 'evidence' in the usual sense."

ties of persons suffering physical impairments of various kinds, including those of the kind suffered by Graham." These decisions were followed in Rinaldi v. Ribicoff, 2 Cir., 305 F.2d 548; Pollak v. Ribicoff, 2 Cir., 300 F.2d 674; Hall v. Flemming, 6 Cir., 289 F.2d 290; and Butler v. Flemming, 5 Cir., 288 F.2d 591. See also Opp Cotton Mills v. Adm'r Wage & Hour Division, 312 U.S. 126, 155, 61 S.Ct. 524, 85 L.Ed. 624; Ellers v. Railroad Retirement Board, 2 Cir., 132 F.2d 636, 639; International Ass'n etc. v. NLRB, 71 App.D:C. 175, 110 F.2d 29. The consideration of medical treatises is specifically approved in Soler v. Ribicoff, S.D.N.Y., CCH, UIR, Fed. ¶ 14,300. Cf. Glendenning v. Ribicoff, W.D.Mo., 213 F.Supp. 301, where "an opportunity to show the contrary", as required by 5 U.S.C.A. § 1006(d), had not been afforded.

For the foregoing reasons the decision of the Secretary must be and it is hereby affirmed. The Court feels that it should specially commend counsel for plaintiff for the able, though unfruitful, services he has rendered her.