TALIAFERRO, Judge.
Plaintiff sued to recover ten per cent (10%) commission on the price of air conditioning equipment sold by the defendant,, James W. Walker, doing business as Jimmie Walker Home Appliances, to Sam Jacobs and/or Jack Bloch, in the City of Alexandria, Louisiana. Bloch is Jacobs’' father-in-law and it is indicated that he was wholly or in part financing the building hereinafter mentioned.
Defendant is engaged in the business of selling, among other things, commercial refrigeration and air conditioning equipment, and at the purchaser’s option, installs the same for additional compensation. In May, 1948, he contracted with the plain *701 tiff to sell commercial refrigeration and air conditioning, etc., as alleged by plaintiff, “on a commission basis of ten per cent (10%) of the sale price to the purchaser * * * exclusive of the cost of installing”. As a basis for his alleged right to demand and receive the commission sought herein, plaintiff further avers as follows, to-wit:
“That in the sale of air conditioning the agreement between Plaintiff and Defendant was that Plaintiff would secure a prospective purchaser, find out what he desired, submit the same to the air conditioning engineer of Defendant who would figure the cost of equipment and installation and make a price thereon at which the same would be furnished the prospective purchaser; that the commission is due Plaintiff when the equipment is delivered to the purchaser.”
In the month of June or July, after being employed or engaged by the defendant, as aforesaid, plaintiff learned that a new building was being erected in said city and stopped at the situs thereof for the purpose of ascertaining the name of the person or persons for whom the building was being erected and ultimately in the hope of interesting such owner or owners in the purchase of air conditioning equipment therefor. He was told by a workman or the foreman that Mr. Sam Jacobs of the City was having the work done. The following day he contacted Mr. Jacobs and learned from him that a bowling alley would be conducted by him in the building, and that he expected to have it air conditioned. It was then agreed that plaintiff, at the hour of 3:30 P.M. that day would call by Mr. Jacobs’ office and get a plan of the building for the purpose of having calculated by defendant’s engineer, Mr. C. E. Turrentine, the cost of the air conditioning equipment necessary therefor. Plaintiff then notified Mr. Tur-rentine of the situation and he also was at Jacobs’ office at the appointed hour and participated in the discussion then and there had. The plan of the building was delivered to Mr. Turrentine, who, with plaintiff, repaired to defendant’s office to figure the cost of one fifteen-ton unit. From that time on plaintiff had absolutely nothing to do with the discussions, negotiations, etc., concerning the pending sale, but did keep in touch with Turrentine in order to be informed as to the progress of matters.
After the cost of the fifteen-ton unit had been arrived at by Turrentine and submitted to Jacobs and Bloch, they decided that that unit would not be adequate for the building and had Mr. Turrentine calculate the cost of one twenty-ton unit installed.
It is evident that all along other parties were interesting themselves in selling to Bloch and Jacobs air-conditioning for the building, particularly the Westinghouse people, as after Turrentine had calculated the cost of the twenty-ton unit installed, Jacobs and Bloch-informed him that they had closed a contract for the air conditioning with a local agent of the Westinghouse people. Turrentine and defendant then felt that they had lost the sale and closed their files on the subj ect.'
However, Jacobs and Bloch did not close with -the agent of the Westinghouse people and negotiations with them ended. Some two or three weeks thereafter Bloch renewed negotiations with Turrentine, but made it clear to him that he was unwilling to pay a “mark-up of forty per cent” on the price of the unit and a salesman’s commission in addition. He inquired of Tur-rentine if a purchase of the equipment on a different basis could not be arranged and was informed that such could be done. The sale was finally closed for -two fifteen-ton units on a basis of cost price, plus twelve per cent (12%).
It is shown that when the sale of an air conditioning unit is closed by a salesman of the defendant, the commission of ten per cent (10%) due him for -his services is added to the price of the unit, excluding the cost of installation.
Plaintiff contends that the law governing real estate brokers applies to the facts of this case and that when he procured the prospect to whom a sale was eventually made, without further effort on his part, he had earned the commission; while defendant controverts this position and contends that plaintiff was merely a sales *702 man or clerk and as he did not close the sale to Jacobs and Bloch, no commission is due him.
Plaintiff’s demand was rejected and he appealed to this Court. The Lower Court gave lengthy written reasons for resolving the issues against plaintiff and specifically held that he was not a broker, but a salesman.
Articles Nos. 3016 and 3017 of the Civil Code appear under the title: “Of Manda-tary Or Agent Of Both Parties”. They read:
“The broker or intermediary is he who is employed to negotiate a matter between two parties, and who, for that reason, is considered as the mandatary of both.”
“The obligations of a broker are similar to those of an ordinary mandatary, with this difference, that his engagement is double, and requires that he should observe the same fidelity towards all parties, and not favor one more than another.”
It is clear from the facts of this case that plaintiff in no sense of the term acted as “Mandatary or Agent Of Both Parties”. He simply found a prospect and submitted his name to defendant which was followed by some discussion of the subject and then ceased his efforts toward bringing the parties together on terms of a sale.
Mr. Walker, the defendant, concerning the duties of a salesman on a commission basis, testified that the usual routine in such matters consisted of the following steps, to-wit: The salesman locates and brings in a prospect, who is then turned over to the air conditioning engineer who surveys the job. Thé engineer determines the price at which the equipment can be sold and installed and fills out a proposal with the salesman’s name on it. Then the proposal is presented to the salesman whose duty is to again contact the prospect and endeavor to close a sale on the terms embodied in this proposal. If the deal is closed, the salesman takes from the prospect a cash deposit to bind the trade and the matter is then referred back to the seller. Mr. Turrentine corroborates in all material respects ■ the testimony given by Mr. Walker on this phase of the matter. It is clear that the procedure indicated was not entirely followed in the present case.
Plaintiff admits that no proposal was delivered to him by the defendant, or by anyone acting for him, after Turrentine calculated the cost of the fifteen-ton unit, or at any other time. Plowever, he admits that he did not ask for one and Mr. Walker testified that it was not given to him because he did not ask for it, and apparently abandoned the whole matter.
The record is barren of any -testimony concerning sales of the air conditioning equipment, if any, by plaintiff for the defendant. Had other sales been made, the modus operandi employed therein would possibly be o-f material assistance in determining the present case.
One case in the jurisprudence of •this State which throws some light upon the difference in duties and obligations between a clerk or a salesman and a broker, as regards the employer or principal, is Auguste Tete v. D. Lanaux, Executor, 45 La.Ann. 1343-1346, 14 So. 241, 243. In that case there was a written contract be-1 tween the parties in which the plaintiff was denominated “broker”, and his duties were specifically defined. Notwithstanding all of this, the Court held that he was in reality a clerk, on the ground that the substance and essence of - a contract, rather than its form, should be looked to in order to clearly determine the law applicable to its interpretation. The Court, concerning this question, said:
“A clerk is one who hires his services to an employer at a fixed price, under a stipulation to do and perform some specific duty or labor, which requires the exercise of skill. ‘The broker is he who is employed to negotiate a matter between two parties, and who for that reason is the mandatory of both.’ Rev.Civil Code, art. 3016.
“The leading and essential difference between a clerk and a broker is that the former hires his services exclusively to-one person, while the latter is employed to make bargains and contracts between other persons in matters of trade, commerce, and navigation.”
*703 Of course, plaintiff’s right to recover, or his lack of such right, depends upon the terms of the contract between him and defendant. It was verbal. Plaintiff’s contention that when he introduced to his employer a prospect with whom a sale was ultimately closed, without further intervention on his part, he had discharged his full duty under the contract of employment, does not strike us as being reasonable nor logical. It does not sound business-like. Strict proof of such an unusual contract would have to be made in order to entitle the salesman to a commission. If such a contention be sbund, then the employer would forever be barred from dealing with such prospect on any terms or basis unless he expected to pay the salesman a commission.
As to the terms of the contract, regardless of all other considerations, the testimonial proof preponderates against plaintiff’s contention.
In his written reasons for judgment, the trial judge clearly and forcefully discusses all issues raised herein. We quote with approval the following portion of said reasons, to-wit:
“I am of the opinion that the plaintiff was not a broker but a salesman and would not be entitled to his commission unless he had made a sale of defendant’s merchandise. He was engaged in defendant’s business only and whereas he was out in the field making the sales on behalf of his employer, nevertheless, he was in a sense a clerk employed by the defendant to sell his merchandise. There is a vast difference between the services of a broker and that of a salesman or a clerk. A broker is defined by 3016 C.C. as one who is employed to negotiate a matter between two parties and is considered as a mandatary of both parties. See also Tete v. Lanaux, 45 Ann. 1343, 14 So. 241. A broker is a middle man or a negotiator between two parties. He does not have possession, management or control of the property to be sold. His principal business is to bring the parties together and under our jurisprudence when he has done that he is entitled to his commission. I am unable to see in this case that plaintiff occupied that position. He was strictly a salesman. Under his contract of employment he was to do more than to bring the parties together. It was his duty to help promote the sale and installation of such equipment as was sold in this case. I think it was his duty to see that the customer was satisfied with the equipment and willing to purchase it at the quoted price. He was in the category -of a salesman and not entitled to any commission until he was instrumental in completing a sale on behalf of his employer.”
For the reasons herein assigned, the judgment from which appealed, is affirmed with costs.