REDMANN, Judge.
Defendant Stephen B. Kapelow appeals from a judgment against himself individually for $2,400 claimed by plaintiff as a bonus under a written agreement relating to plaintiff’s employment.
Issues on appeal include whether plaintiff is entitled to any bonus, and, if so, whether Kapelow individually is liable for the bonus.
Plaintiff was employed to supervise construction of two large apartment complexes to be built by defendant Cambridge Construction Company, Inc., on land owned by Kapelow. Kapelow was president of the corporation and owned at least 80% of its stock.
The agreement in question was handwritten by Kapelow on his personal stationery, and recited:
“9/19/66
“Completion of TT3:
$1,000.00 cash
$1,000.00 bonds
“From then on:
$150.00/week
$100.00/month in bonds
“Completion of Lynne 3:
$1,000.00 bonds — bonus.”
The agreement was signed by Kapelow without any indication he was acting for the corporation or otherwise than for himself.
Kapelow “DBA Cambridge Realty Co.” paid plaintiff $6,598.18, and Cambridge Construction Company, Inc. paid him only $221.40 during 1966, according to income tax withholding forms in evidence.
Kapelow nevertheless testified that the salary sources were mere bookkeeping transactions, and that the corporation alone was plaintiff’s employer. But it is precisely proper bookkeeping which affords limitation of personal liability when conducting one’s business as a corporation, and which establishes a liability as corporate rather than personal. A review of the testimony and the other evidence just recited suggests to us no error in the trial judge’s conclusion that plaintiff was employed by Kapelow individually, and that plaintiff may demand the bonus from Kapelow individually, if it is otherwise due.
But Kapelow argues both that the bonus agreement was rescinded in favor of a raise in salary earlier than that provided by the agreement; and that plaintiff did not earn the bonus anyway because of unsatisfactory work. Plaintiff denies both these assertions.
 The burden of proving an alteration in the terms of the written employment agreement lies with the party alleging the change; Dunbar v. Orleans Metal Bed Co., 145 La. 779, 82 So. 889 (1919). Kapelow’s only evidence was his own unsupported testimony. Evidence to the contrary included the payment by Kapelow of $300 against the bonus on two different occasions, and the circumstance that complex “TT3” was sold by Kapelow in January 1967, suggesting it was nearing completion four months earlier when the bonus agreement was executed. It seems improbable substantial bonuses would be waived for a few dollars a month salary increase for at most a very few months. We find no error in the trial court’s rejection of the recission argument.
Nor do we find error in the trial judge’s rejection of the defense that the bonuses were not earned because of unsatisfactoriness of plaintiff’s work, even assuming this qualification could be read into the apparently unqualified agreement. Kape-low attributed several errors to plaintiff, and asserted those errors had required corrective measures of a value far in excess of the bonuses claimed. But again we believe the burden is on Kapelow to prove this defense; see Shemper v. Irving Her- *542 skovits Fur Co., Inc., 10 La.App. 89, 120 So. 270 (1929). And again we find the proof lacking. No plans or specifications were introduced to cast fault on plaintiff. Most of the problems seem to have been in the plumbing, for which presumably the plumbing subcontractor would have been liable (although he had “skipped out on the job”). Nor were actual costs of correction shown. And plaintiff denied any responsibility for the alleged errors.
Under these circumstances we find no error in the trial judge’s conclusion that there was no proven instance of plaintiff’s work having been unsatisfactory.
Plaintiff’s employment was terminated by mutual agreement when the second complex was 95% complete, at a time when plaintiff was holding several paychecks which had been returned NSF (although they were thereafter made good by Kape-low). Plaintiff testified that Kapelow had planned to halt construction for a few months. Kapelow was obviously having some financial difficulties. Plaintiff testified that about four weeks after the termination of his employment, when he received the last good check for his salary, and the bonuses were not included, he had a discussion with Kapelow during which Kapelow wrote, at the bottom of the original agreement, figures showing $600 cash had been paid, leaving “$400.00 cash, $2,000.00 bonds.” Although Kapelow testified subsequent to this testimony by plaintiff, he did not deny plaintiff’s assertions. We have no hesitancy in concluding plaintiff did not forfeit his bonus for the second complex by agreeing to terminate his employment under the circumstances. Yet we believe the bonus was intended simply as extra pay for the whole job, to be paid after completion, and we think it only fair to hold that where circumstances justify ending the job before completion, the entire bonus has not been earned. We believe that here plaintiff can only recover 95% of the second bonus, and he is not entitled to the other 5%, just as he would not be entitled to his regular salary after ending his employment.
Finally we note, as urged alternatively by Kapelow that the bonus was agreed to include U.S. savings bonds, which could be bought for 75% of face value, and that is the measure of Kapelow’s liability in respect to the bonds. Quantum must therefore be amended to $400 plus $750 for the first bonus, and 95% of $750 for the second.
Accordingly the judgment appealed from is amended to -reduce its principal to $1,862.50, and as thus amended it is affirmed at appellants’ cost.
Amended and affirmed.